DANIEL M. GUNN v. SARAH K. McALPINE and Others.[1]

May 8, 1914.

Nos. 18,368—(46).

**Contract — failure of consideration — prorating the deficiency.**

For a consideration moving from D. to M. the latter agreed to pay the claims of certain creditors of the former. In this action against M. by one of such creditors to recover on such agreement, it is *held:*

(1) The findings of the trial court as to the extent of a partial failure of consideration for the agreement are sustained by the evidence.

(2) Where there is such a partial failure of consideration, the deficiency should be borne by the creditors *pro rata* in the proportion that the claim of each bears to the total consideration. The prorating of such deficiency in this case was correct.

(3) There was no error in denying a motion for a new trial based on newly discovered evidence.

Action in the district court for St. Louis county to recover $6,045.-79. The facts are stated in the opinion. The case was tried before Cant, J., who, at the close of plaintiff's case, denied defendant's motion to dismiss the action, and made findings and ordered judg-

[1] Reported in 147 N. W. 111.

ment in favor of plaintiff for $5,007.56, less the sum of $719.20, the proportionate part of the sum of $3,100. From the order denying his motion for a new trial, defendant appealed. Affirmed.

*R. R. Briggs, Harris Richardson* and *T. T. Hudson,* for appellant.
*R. J. Powell* and *George H. Spear,* for respondent.

Bunn, J.

This action was brought by plaintiff against John McAlpine. A trial before the court without a jury resulted in a decision in favor of plaintiff. Defendant moved for a new trial, and appealed from an order denying such motion. After the appeal was taken McAlpine died, and his personal representatives were substituted as defendants.

An outline of the facts shown at the trial is necessary to an understanding of the questions involved. The action was brought on a written contract entered into October 1, 1904, in which McAlpine agreed to pay the claims of certain creditors of one A. J. Dwyer. Plaintiff was one of these creditors, and certain others assigned their claims to him. In 1902 McAlpine and one Davis owned a large amount of timber in Itasca county and entered into a contract with Dwyer by the terms of which Dwyer agreed to cut, haul, and put afloat in the Mississippi river all of the timber owned by McAlpine & Davis on lands described for a consideration of $4.75 per thousand feet. Dwyer provided an outfit, established camps and cut and delivered 17,000,000 feet during the season of 1902–1903. The next season Dwyer enlarged his outfit, on the instructions of Davis, and cut some 30,000,000 feet. Dwyer became involved financially, and in August, 1904, negotiations begun between him and McAlpine for a settlement. These negotiations terminated October 1, 1904, in the contract which forms the basis of this suit. Shelley, who was a party to this contract, owned a part of the logging outfit, subject to a $4,500 mortgage to Davis. The contract was in substance as follows:

Dwyer and Shelley sold to McAlpine all of the outfit, supplies, utensils and property used in the logging operations, including 35 horses then in Minneapolis, which Shelley and Dwyer agreed to load upon the cars for McAlpine. The property was described in a sched-

ule attached to the contract; it was agreed that certain land described in the schedule and belonging to Dwyer should be conveyed to McAlpine by warranty deed to be delivered at the time the contract was executed and delivered. The logging contract of 1902 was assigned to McAlpine, and he and Davis were released from all liability thereon.

In consideration McAlpine gave his notes to Shelley, aggregating $7,500, and agreed to pay to Davis the $4,500 due him by Shelley. He further agreed "that upon or before April 15, 1905, he will pay to the parties named in Exhibit B, hereto attached, the amounts set opposite their respective names, such amounts being claims which are now outstanding in favor of said parties and against the said Dwyer."

This contract was executed by the parties, and delivered. The warranty deed was delivered to McAlpine, who caused it to be recorded. The logging contract was assigned to McAlpine, and the personal property and logging outfit, described in the inventory attached to the contract, was delivered to him, with the exception of a loading engine, certain horses and certain merchandise, all of which the trial court found were not delivered by Dwyer and Shelley, and together were of the value of $3,100. The inventory showed the entire value of all the property agreed to be delivered by Dwyer and Shelley to be $34,121.20.

As stated, McAlpine, upon the execution of the contract gave his notes aggregating $7,500 to Shelley and paid $4,500 in cash to Davis for Shelley. He took possession of the logging outfit and personal property, including the horses shipped to him from Minneapolis. Plaintiff's claim against Dwyer, as stated in the schedule attached to the contract, was $1,527.09. Including the claims of other creditors assigned to him, the total amount of plaintiff's claim was $5,007.56. The entire amount of all the claims which McAlpine agreed to pay was $9,572.84, and the total consideration moving from defendant, including the payments to Shelley and Davis was the sum of $21,-572.84.

McAlpine failed to pay any of the claims represented by plaintiff and this action followed. The defenses were: (1) A denial that he

agreed to pay; (2) a failure of consideration in that Dwyer and Shelley failed to deliver the property they agreed to; (3) the agreement, if any was made, was void under the statute of frauds; (4) the statute of limitations; (5) former action pending.

It is not contended here that the court's finding that the contract was made is not sustained by the evidence. Nor is there any question now raised as to the statute of frauds, the statute of limitations, or as to the defense of the pendency of a former action. The assignments of error number 143, but few are urged in the brief, and the others are therefore waived under repeated decisions of this court. The argument of defendants' counsel was directed mainly to the defense of partial failure of consideration, the contentions in this regard being that the findings as to the value of the property that Dwyer and Shelley failed to deliver to McAlpine are not sustained by the evidence, and that the court erred in prorating the deficiency instead of charging the entire amount to plaintiff. It is further contended that the motion for a new trial should have been granted on the ground of newly discovered evidence.

1. It would be useless to discuss the evidence on the question of the extent or value of such part of the outfit as was not received by McAlpine. The evidence was conflicting, and much depended on the credibility of the witnesses. We hold the evidence ample to sustain the findings of the trial court in this regard.

2. The trial court prorated the deficiency of $3,100. That is, it held that there should be deducted from the total amount of plaintiff's claims such proportionate part of the deficiency as the total amount of such claims bears to the total consideration moving from defendant under the terms of the contract. The deduction on this basis amounted to $719.20. The trial court, before passing on the motion for a new trial, prepared and mailed to counsel a memorandum in which he stated that certain corrections should be made in the conclusions reached; that no part of the $3,100 shortage should be apportioned to the $4,500 paid by McAlpine to Davis, and that it was possible that the same was true as to the notes given Shelley, depending upon the question whether they had passed into the hands of innocent purchasers at the time McAlpine discovered the shortage.

Permission was given to apply to reopen the case and offer evidence along the lines suggested. No such motion was made, however, and thereafter the court of its own motion amended its conclusions, making the amount to be deducted from plaintiff's total claim $908.94, this further deduction being based on the decision that the $4,500 payment to Davis should bear no part of the shortage.

Defendants strenuously insist that the entire shortage should have been charged to plaintiff. Many authorities are cited to prove the elementary proposition that the creditors of Dwyer, whose claims McAlpine agreed to pay, stood in Dwyer's shoes; that is that the claims were subject to the defense of failure of consideration, or to an offset because of a partial failure of consideration. There can be no doubt of the soundness of this doctrine, and it was applied by the trial court. But less than a third of the claims that McAlpine agreed to pay were involved in this action. Must the entire shortage in the consideration be charged to these claims? Plaintiff stood in Dwyer's shoes, but other creditors did also. Each creditor ought to bear his proportion of the shortage, but no creditor should bear more. If there was a partial failure in the consideration moving to McAlpine for his agreement to pay Shelley, and Dwyer's creditors, equity requires that the deficiency be prorated among the beneficiaries of the agreement. This was what the trial court did, and we hold it was right. Authorities are not needed to support a conclusion so obviously the only just or equitable one that could be reached.

3. The claim that there was newly discovered evidence that required the granting of a new trial needs but a brief mention. We have examined the affidavits and are clearly of the opinion that the denial of the motion was well within the court's discretion.

The contentions of defendants that are not covered by what is already said, have been considered. They are without merit, and do not deserve further mention.

Order affirmed.