## WILLIAM BECKER v. A. N. NELSON.[1]

October 2, 1925.

No. 24,867.

When grantee, who has assumed grantor's mortgage, may defeat action against him on the mortgage.

1. If, by reason of false and fraudulent representations made to the grantee in a deed of land which had been mortgaged by the grantor, the grantee is induced to assume and promise to pay the mortgage debt, he may defeat an action brought against him by the mortgagee by pleading and proving the fraud.

[1] Reported in 205 N. W. 262.

**When grantee may recoup damages.**

2. When a promise is thus obtained, the grantee need not rescind, but may retain what he got under the deed, wait until the mortgagee sues to enforce the promise, and then set up the fraud as a defense and recoup damages.

**Evidence insufficient to prove amount of damages.**

3. The evidence showed that the grantee had been damaged by the fraud, but the amount was not definitely established. On a new trial both parties should be permitted to offer evidence on the question of damages.

1. See Mortgages, 27 Cyc. p. 1347.

2. See Mortgages, 27 Cyc. p. 1350.

3. See Appeal and Error, 4 C. J. p. 1199, § 3239.

---

1. See notes in 25 L. R. A. 257; 2 L. R. A. (N. S.) 783.

2. See note in 21 A. L. R. 439 et seq. 6 R. C. L. 884; 2 R. C. L. Supp. 236; 4 R. C. L. Supp. 449; 5 R. C. L. Supp. 375.

Action in the district court for Renville county. The case was tried before Baker, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying his motion for a new trial. Reversed.

*George F. Gage,* for appellant.

*Freeman & Smith,* for respondent.

LEES, C.

In August, 1917, Theodore H. Zorn was the owner of three lots in the village of Gardena, North Dakota. A dwelling house and a store in which Zorn had a stock of merchandise were located on the lots. Zorn mortgaged the real property to plaintiff to secure a note of $3,000, payable November 1, 1920. In September, 1918, Zorn conveyed the real property to defendant by a deed of general warranty. The deed provided that defendant should assume and pay plaintiff's mortgage. Zorn also transferred the stock of merchandise to defendant. An inventory of the stock showed that it was of the value of $12,239.42. Zorn's equity in the real property

was valued at $3,000, making the total amount to be paid by defendant $15,239.42, in addition to the mortgage indebtedness to plaintiff. To make up this amount defendant conveyed to Zorn an equity in a farm in Swift county, valued at $9,800, paid $4,947.84 owing by Zorn for merchandise purchased from a St. Paul firm, and also paid him $491.58 in cash. To induce defendant to enter into the agreement which resulted in the making of these transfers and payments, Zorn represented that his indebtedness to the St. Paul firm, and $500 in addition thereto, was all he owed for merchandise purchased. The representation was false, his indebtedness being more than $15,000 in addition to the amounts disclosed to defendant. Soon after the entire transaction was closed, on the theory that the Bulk Sales Law of North Dakota had not been complied with, Zorn's creditors attached the stock of merchandise and had it sold by a receiver to satisfy their claims. They also attached the Swift county land which defendant had conveyed to Zorn, so that in the end defendant lost his farm land and over $5,000 in money and had nothing to offset the loss except the mortgaged real property in the village of Gardena.

When defendant discovered the fraud he demanded a rescission, but of course Zorn was unable to return what he had received, and the status quo could not be re-established.

Plaintiff did not know of the existence of the mortgage assumption clause until more than a year after the deed was executed. Some time thereafter he brought this action to compel defendant to pay the debt. The action was defended on the ground that defendant's acceptance of the deed and his promise to pay the mortgage debt were procured by fraud and that the fraud defeats a recovery.

The trial court made findings in plaintiff's favor, denied a motion for a new trial, and this appeal followed.

Plaintiff offered no evidence to contradict or explain defendant's proof of the fraud or to show that defendant had not suffered a substantial loss by reason thereof. He rested his case wholly on the assumption clause in the deed, and so the question to be de-

cided is whether the grantee in a deed containing such a clause can defend an action brought by the mortgagee by showing that the grantor fraudulently induced him to accept the deed and promise to pay the mortgage indebtedness. Plaintiff did not alter his position because of anything defendant did or agreed to do. He is still the holder of Zorn's note. He has the same mortgage security as before. He is merely the gratuitous beneficiary of defendant's promise to pay Zorn's debt.

In this state, the liability of a grantee of mortgaged premises, who has assumed and promised to pay the mortgage debt, is referable to the rule that where there is a legal obligation on the part of the promisee to a third person, as where the grantor is personally liable to the mortgagee for the payment of a mortgage, the third person may enforce the promise. Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882; Wood v. Johnson, 117 Minn. 267, 135 N. W. 746. In the case last cited, the following language is quoted from Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618.

"A stranger to a contract between others in which one of the parties promises to do something for the benefit of such stranger, there being nothing but the promise, no consideration from such stranger, and no duty or obligation to him on the part of the promisee, cannot recover."

The court then proceeded to say:

"This rule was applied in Nelson v. Rogers, 47 Minn. 103, 49 N. W. 526, to a promise by the grantee of land to pay an outstanding mortgage for which the grantor was not personally liable, and it was held that such a promise could not be enforced. This is clearly the law in Minnesota, and is, we think, sound law; but the converse of the proposition is just as clearly settled and just as sound. Where there is a legal obligation on the part of the promisee to the third person, as where the grantor is personally liable to him for the payment of a mortgage, the third person may enforce the promise."

Although we have been cited to no Minnesota case in which the facts are the same as in the one at bar, it is clear that Zorn could not have compelled defendant to pay his debt to plaintiff, if defendant proved that his promise was obtained by Zorn's fraudulent representations, and we think plaintiff's rights can be no better than Zorn's. Cases in other jurisdictions which support this conclusion are collated in 21 A. L. R. p. 488, et seq. Dunning v. Leavitt, 85 N. Y. 30, 39 Am. Rep. 617, states the reasons which have led to the adoption of the doctrine. After announcing the general rule that a person not a party to the promise but for whose benefit the promise is made cannot maintain an action to enforce the promise where the promise is void between the promisor and promisee for fraud or want of consideration, or failure of consideration, the court proceeds to say:

"The party suing upon the promise * * * is in truth asserting a derivative right. * * * There is no justice in holding that an action on such a promise is not subject to the equities between the original parties springing out of the transaction or contract between them. It may be true that the promise cannot be released or discharged by the promisee, after the rights of the party for whose benefit it is said to have been made, have attached. But it would be contrary to justice or good sense to hold that one who comes in by * * * 'the privity of substitution' should acquire a better right against the promisor than the promisee himself had."

Minnesota cases indicating approval of the doctrine are Rogers v. Castle, 51 Minn. 428, 53 N. W. 651, and Gold v. Ogden, 61 Minn. 88, 63 N. W. 266.

In Clarinda Nat. Bank v. Kirby, 191 Iowa, 786, 183 N. W. 478, discussing the question under consideration here, the court said:

"The appellant is not in position to claim any rights as an innocent purchaser. The defendant is not liable as a maker of the note, nor as indorser or guarantor thereof. If liable at all, it is upon the alleged contract found in the Kempton deed to him, to assume and pay the mortgage debt. That contract or agreement is non-negotiable; and, in the absence of any estoppel, he may plead

and prove, if he can, that it was obtained by fraud or false representations, or was wholly without consideration, as against any person seeking its enforcement."

We adopt the views expressed in these cases, and hold that defendant's uncontradicted evidence established his defense.

One of the points argued in respondent's brief is that the defendant never rescinded, but, on the contrary, by various acts such as the payment of interest on the mortgage, affirmed the transaction with Zorn. The rule is that a party who has been fraudulently induced to enter into a contract has an election of several remedies. One of them is to wait until an action has been brought to enforce the contract and then set up the fraud as a defense and recoup damages. In Smith v. Werkheiser, 152 Mich. 177, 115 N. W. 964, 125 Am. St. 406, 15 L. R. A. (N. S.) 1092, the rule is thus stated:

"There is no doubt that complainants might recover the damages caused by this fraud by bringing suit in a court of law against the defendants. * * * Nor is there any doubt that if complainants were sued in a court of law for the balance unpaid on the contract they might recoup the damages caused by said fraud. And this would be true whether that suit were brought in the name of the original parties to the fraud or in the name of the assignee of those parties, unless that assignee stood in the attitude of a good-faith purchaser of negotiable paper."

This court has frequently held that a defrauded party need not rescind but may affirm the contract and sue for damages. Dun. Dig. § 1815. This in principle leads to the conclusion that he may wait until the other party sues on the contract and then set up fraud and resulting damages as a defense or by way of recoupment, and the courts so hold. See 12 R. C. L. p. 408; Kirby v. Dean, 159 Minn. 451, 199 N. W. 174.

Another point raised is that there was no evidence of the market value of defendant's equity in the Minnesota farm land, or as to the market value of the real property and merchandise Zorn transferred to defendant, hence it is contended that the defense failed

for lack of proof of damage, which is essential in such a case as this. Kirby v. Dean, supra.

To say nothing about the value of the Minnesota land, it is certain that defendant parted with more than $5,000 in cash, for which he received nothing but the North Dakota property, mortgaged for $3,000 and of such doubtful value that plaintiff has not sought to enforce the mortgage, preferring to collect the debt, if he can, from the defendant. There is proof of substantial damage, although the amount thereof is left in doubt by the proofs.

The question of damages was not fully litigated, and, since there must be a new trial, we think it proper to say that both parties should be allowed to offer evidence as to the market value of the properties which were exchanged, in order that the court may determine the amount of damage defendant has suffered. If it amounts to as much or more than plaintiff's claim, plaintiff cannot recover anything. If it amounts to less, plaintiff may recover the difference.

Order reversed and a new trial granted.