OSCAR HANSEN v. JAMES F. PROCTOR AND OTHERS.
THEODOR HERMAN AND ANOTHER, APPELLANTS.[1]

December 30, 1955.

No. 36,541.

[1]Reported in 74 N. W. (2d) 281.

68

*Herman & Raskin,* for appellants.
*Donald L. Rudquist,* for plaintiff-respondent.

DELL, CHIEF JUSTICE.

Plaintiff, Oscar Hansen, instituted an action in the District Court of Hennepin County against the defendant James F. Proctor to recover the sum of $5,056.31 for merchandise and equipment sold to Proctor by the plaintiff between February 1 and August 1, 1948, and also against the defendants Theodor Herman and M. J. Besner for the sum of $5,056.31 based upon the claim that they had assumed and agreed to pay the indebtedness of Proctor to the plaintiff. The trial was to the court without a jury and resulted in findings that the defendants, Proctor, Herman, and Besner, were jointly and severally indebted to the plaintiff in the sum of $2,516.02, and that the defendant Proctor, in addition thereto, was also indebted to the plaintiff in the sum of $1,540.29. From an order denying the motion of the defendants Herman and Besner for amended findings or a new trial they appeal. There is no appeal by the defendant Proctor. For convenience Proctor will be referred to as the defendant and Herman and Besner as the appellants.

During the year 1948 and prior thereto plaintiff owned and operated a service station in Minneapolis and also did contract hauling to Chicago for Moland Brothers. He owned a Trailmobile trailer, a Kingham trailer, and a Federal tractor, which vehicles he used in connection with his trucking business. The defendant was at that time also engaged in the trucking business under the trade name of Proctor Cartage Company and was a customer at plaintiff's service station where he maintained a charge account.

On February 5, 1948, or thereabouts, plaintiff and defendant entered into an agreement whereby plaintiff agreed to sell to the defendant the two trailers and tractor, together with his contract hauling rights with Moland Brothers, for the sum of $10,000. Under the agreement defendant was to pay plaintiff $1,000 in cash, and $5,000 was to be paid by the defendant's executing a chattel mortgage to the Northwestern National Bank of Minneapolis for that sum on the equipment which he was purchasing from the plaintiff and by applying the proceeds received under said chattel mortgage upon plaintiff's indebtedness to said bank. The remainder of the purchase price of $4,000 was to be paid by defendant's executing a. second chattel mortgage on said equipment to the plaintiff for that sum payable in monthly installments. Transfers of the title cards to the trailers and tractor were made by the plaintiff to the defendant, the $1,000 cash payment was made, and the $5,000 chattel mortgage was executed upon said equipment by the defendant to the bank and the proceeds thereof applied upon plaintiff's indebtedness to said bank.

Appellant Besner was defendant's bookkeeper and accountant. Plaintiff and defendant conferred with Besner who advised them to have appellant Herman, a lawyer, draw the second chattel mortgage of $4,000 to plaintiff. Herman was interviewed and promised to prepare the mortgage setting forth the monthy payments. Since he was busy he had the defendant sign the mortgage in blank and promised, when it was completed, to send it over to Besner for delivery to plaintiff. Herman never completed or delivered the mortgage as he promised to do.

On February 5, 1949, defendant and appellants entered into an agreement in writing. Under this agreement the defendant transferred all of his trucking equipment and business, which he operated under the trade name of Proctor Cartage Company, to appellants and in consideration thereof appellants agreed to pay all liens against said equipment and all of the unpaid indebtedness of defendant arising out of the operation of his trucking business. One of the debts which the appellants under said agreement assumed and

agreed to pay was that of the defendant to the plaintiff; the amount of said indebtedness, however, was not stated in the agreement.

While there are several assignments of error the questions involved, as stated in appellants' brief, are: (1) What is the indebtedness due plaintiff from defendant, and (2) how much of that indebtedness do the appellants owe? The facts under well-settled rules of law will be stated in the light most favorable to the findings.

■ The court found that during the months of May, June, and July 1948, plaintiff sold and delivered to the defendant gasoline, oil, Diesel fuel, and miscellaneous merchandise, parts, and repairs of the reasonable value and agreed price of $1,056.31 and that no part thereof was paid. Appellants claim that this sum should be reduced by $252.70 representing $79.80 for Diesel fuel which they claim defendant did not purchase; $125.40 for parts and repairs which they claim defendant did not receive, and $47.50 for which they say there were no sales slips. There was positive testimony from the plaintiff that he sold and delivered to the defendant the items of merchandise, including the parts and repairs for which defendant was charged. It also appears that at times parts were procured from suppliers for the benefit of defendant which were thereupon delivered and charged to him. Moreover, exhibit "A," which was prepared in duplicate on plaintiff's regular printed billing stationery, showing the specific charges totaling $1,056.31, was admittedly presented by the plaintiff to the defendant and approved by him by defendant signing the instrument in his own handwriting "O. K. Jim." (Italics supplied.) The duplicate of the exhibit was delivered to defendant's bookkeeper, Besner. This exhibit, which was properly received in evidence as an admission, supports, if not compels, together with the other evidence in the case, a finding that the correct amount of the indebtedness was $1,056.31 as determined by the court.

■ The court found that the plaintiff, at the time of the sale, represented and warranted to the defendant that the Federal tractor was in good mechanical condition and that if said representation and warranty had been true its reasonable market value would have been $2,500; that said tractor was not in good mechanical condition

as represented and warranted and that its reasonable market value was $1,500. Accordingly the court allowed the defendant a credit upon his indebtedness to the plaintiff in the sum of $1,000. Appellants claim that the evidence establishes that defendant never took possession, or obtained delivery, of said tractor and that, therefore, he should have received credit for $2,500, its reasonable value as found by the court, rather than $1,000, the amount allowed. There is no merit to this contention. Not only did plaintiff testify that the tractor was delivered to the defendant but one of his employees, Clarence Hensel, testified that at the time of the sale he saw defendant's brother-in-law take possession of said truck and drive it away. Moreover, Hensel further testified that shortly after the sale he discontinued his employment with the plaintiff and worked for defendant and while thus employed drove the tractor in the defendant's business as an employee of the defendant. The record also shows that later on in 1948 Hensel himself purchased the tractor from the defendant and that in making the purchase he borrowed $1,500 from a bank with the defendant as a surety on his note and that this sum was credited on an indebtedness owing by the defendant to the bank.

Appellants claim that the defendant represented to them at the time the assumption agreement was entered into on February 5, 1949, that the indebtedness owing by him to the plaintiff was in the amount of $250 and they, therefore, contend that this sum is the maximum liability to which they can be held in this action. This agreement of February 5 constituted a third-party beneficiary contract. It is well settled that under such a contract the third-party creditor-beneficiary in a suit against the promisor is subject to the same equities and defenses which would be available to the promisor if a suit were brought against him by the promisee,[2] except in those cases where the third party is induced to alter his position in

[2] 12 Am. Jur., Contracts, § 289 (citing cases from many states) ; 2 Williston, Contracts (Rev. ed.) § 394; 4 Dunnell, Dig. (3 ed.) § 1896; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606; Rogers v. Castle, 51 Minn. 428, 53 N. W. 651; Gold v. Ogden, 61 Minn. 88, 63 N. W. 266; Becker v. Nelson, 164 Minn. 367, 205 N. W. 262.

reliance upon the promise or where there is a novation.[3] Thus it follows that, if defendant misrepresented to appellants the amount of his indebtedness to the plaintiff at the time the assumption agreement was entered into and if appellants, believing said representation to be true, relied and acted thereon, such misrepresentation can be set up as a defense by the appellants in this action and thus limit their liability to the plaintiff to that extent.[4] However, if the appellants had full knowledge of the total indebtedness owing by defendant to the plaintiff at the time the assumption agreement was entered into, then appellants are not entitled to avail themselves of that defense and are liable for the full amount of said indebtedness.

From the evidence it appears that Besner kept all of defendant's books and records. All bills pertaining to defendant's business were presented to him and he made out and issued all checks in payment thereof. Defendant wrote no checks, leaving the details of his business affairs to be handled exclusively by Besner. The duplicate of exhibit "A," the statement showing defendant's indebtedness to plaintiff of $1,056.31, was left with Besner. On several occasions plaintiff endeavored to collect this indebtedness not only from defendant but from Besner. Frequently, when attempting to collect, defendant would send plaintiff to Besner and Besner would send him back to defendant. Finally in despair plaintiff asked defendant to stop doing business at his station. When Besner was advised of the sale by plaintiff to defendant of plaintiff's equipment and hauling contract with Moland Brothers for $10,000 it was Besner who advised them to have Herman prepare the second mortgage of $4,000 which plaintiff was to receive as part of the sale price. Herman knew of the details of the sale and when he did not deliver the $4,000 second mortgage to Besner for delivery to plaintiff, plaintiff time and time again endeavored to obtain the same from the defendant and appellants but without success. Starting with

---

[3]Restatement, Contracts, § 143; 12 Am. Jur., Contracts, § 289; 2 Williston, Contracts (Rev. ed.) § 397.

[4]2 Williston, Contracts (Rev. ed.) § 394; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606.

the month of April 1948, Herman and Besner commenced to office together. Herman knew that Besner was handling all of defendant's affairs and he certainly knew that the indebtedness of $4,000, which was to be secured by a second chattel mortgage, had not been paid since he failed to prepare and deliver the mortgage as he promised to do and was aware of plaintiff's futile efforts to obtain the same. When, at the trial, defendant was first asked by Herman what he told appellants concerning his indebtedness to plaintiff at the time of the execution of the agreement on February 5 he testified *"I never told you how much they were or nothing."* (Italics supplied.) Later on he testified that he told appellants the indebtedness to plaintiff was $250. However, his testimony as a whole contained such contradictions and improbabilities as to furnish a reasonable ground for doubting his credibility. Thus the trial court was free to reject the testimony of defendant relating to his purported representation of $250 as the indebtedness owing by him to plaintiff if it so desired.[5] Furthermore, at no place in the record did appellants testify that defendant represented to them that his indebtedness to plaintiff was $250. Neither did appellants produce defendant's books and records at the trial although they were in their possession. Such inference, if any, as was to be drawn from their absence at the trial was for the trial court. Under the circumstances of this case it would be absurd to believe that a man in Herman's position would fail to consult with Besner as to the amount of defendant's indebtedness to plaintiff before agreeing to personally assume such indebtedness. On the record here it would be just as absurd to believe that Besner did not know the true amount of the indebtedness at the time he assumed and agreed to pay it. The finding of the trial court that appellants' liability to plaintiff was not limited to the sum of $250 must be sustained.

The court found that pursuant to the agreement of February 5, 1949, defendant transferred to appellants all of his trucking equip-

[5]Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 356, 16 N. W. (2d) 289, 292, 156 A. L. R. 371; see, also, Grengs v. Erickson, 225 Minn. 153, 29 N. W. (2d) 881; 6 Dunnell, Dig. & Supp. § 10344a; 20 Am. Jur., Evidence, § 1180.

ment with the exception of one trailer and one tractor, the reasonable market value of which was $3,800. This partial failure of consideration accounts for the reduction by a proportionate amount in the claim of plaintiff against the appellants.[6] The procedure adopted by the court in determining the indebtedness of appellants to the plaintiff and the resulting figures are not questioned, nor could they be, on this appeal.

Affirmed.

---

[6]Gunn v. McAlpine, 125 Minn. 343, 147 N. W. 111, holds that under a third-party beneficiary contract when there is a partial failure in the consideration moving to the promisor in return for his agreement to pay the promisee's creditors, equity requires that the deficiency be borne by such creditors pro rata in the same proportion that the claim of each bears to the total consideration.