NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS as Trustee of the Bros Inc. Employees' Retirement Trust,

v.

A. O. WILLIAMSON et al., Appellees,

American Hoist & Derrick Co., Appellant.

Nos. 76–1005, 76–1006.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1976.

Decided Dec. 2, 1976.

Rehearings Denied Dec. 23, 1976.

---

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

In this statutory interpleader action, American Hoist & Derrick Co. (Hoist), as a successor in interest of Bros Incorporated (Bros), claims entitlement to trust funds established by Bros under an employee pension plan. A class of former employees of Bros as participants in the Bros pension plan asserts an adverse claim to these same funds. The district court on a resulting trust theory awarded the funds to the employee class. Hoist appeals. We reverse and remand for further proceedings.

Bros established an employees' retirement plan (the Bros Plan) effective January 1, 1966. With minor exceptions, every salaried employee of Bros under 65 on that date was eligible to participate in the Bros Plan. All contributions to the Bros Plan were to be made by the company on a voluntary basis. Pension · benefits under the Bros Plan were to be based upon length of service with the company and salary level. A participant's rights vested upon completion of 15 years of service with Bros, and five years' participation in the Bros Plan.

Pursuant to the Bros Plan, a separate pension trust (the Trust) was established on December 30, 1966, with Northwestern National Bank of Minneapolis serving as trustee. Bros retained the right to amend the trust arrangement at will. The company contributed $100 to the Trust on December 30, 1966, and $47,987 on March 10, 1967. The Internal Revenue Service ruled in April 1967 that the Plan and Trust qualified for tax exempt status under § 401 of the Internal Revenue Code.

In anticipation of Hoist's purchase of its assets, Bros adopted a plan of dissolution on October 13, 1967, and the sale of assets took place on October 20, 1967. Under the sale agreement, Hoist assumed all of Bros' liabilities, except for Bros' obligations under the Bros Plan and Trust. On October 20, 1967, Bros' directors passed a resolution

Harold Jordan, St. Paul, Minn., for appellant, Boyd H. Ratchye and Theophil Rusterholz, St. Paul, Minn., on the briefs.

James L. Baillie, Minneapolis, Minn., for appellees, Michael A. Stern, Minneapolis, Minn., on the brief.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

amending the Bros Plan. That resolution read:

### RESOLUTION AMENDING BROS INCORPORATED EMPLOYEES' RETIREMENT PLAN

RESOLVED, that the employees' retirement plan of this corporation, the terms of which are stated in that certain instrument designated as "Bros Incorporated Employees' Retirement Plan", be, and it hereby is, amended by adding to Section 13.01 thereof the following paragraph:

"In the event that the Company should enter into a transaction with another corporation (hereinafter called "such corporation") as a result of which all, or substantially all, of the business of the Company is sold and conveyed to such corporation *and all, or substantially all, of the employees of the Company become employees of such corporation,* then such corporation shall have the power to amend This Plan and to adopt This Plan, as amended, as its own. In the event that such corporation has in effect an employee pension plan or plans, qualified under Section 401 of the Internal Revenue Code, *in which the participants in This Plan become participants,* then such corporation may terminate This Plan and may cause the assets of The Fund to be transferred to the trust or other qualified funding medium then existing as a part of such qualified employee pension plan or plans; provided, however, that the actuarial value of the liability assumed by such corporation for benefits based upon service with The Company provided under such plan or plans for participants in This Plan, who become participants in such plan or plans, shall not be less than the value of the assets so transferred." [Emphasis added.]

Thus, Hoist at its option could continue the Bros Plan, or replace the Plan with its own existing pension plan, and, in either event, receive the assets of the Bros Plan Trust.

█ On March 22, 1968, Hoist amended its own pension plan (the Hoist Plan), retroactive to September 30, 1967, extending potential coverage to all former Bros employees who had begun working for Hoist. As Hoist concedes, the provisions of its Pension Plan served to exclude five former Bros employees who were over 60 years old on the date of the acquisition. These over-60 employees could not qualify for pension benefits under the Hoist Plan because of their age and their inability to acquire sufficient years of credited service with Hoist to meet the requirements for pension eligibility. The 1968 amendment to the Hoist Plan granted all former Bros Plan participants a maximum of only five years' service credit for past service with Bros. Thus, the five over-60 employees could not satisfy the under-55 age requirement for initial participation; moreover, since employees could not work past the age of 70, these five also could not attain the required 15 years' credited service.[1]

Beginning in August 1971, a number of former Bros employees asked the Bros Plan

---

1. The employee-appellees contend that two other groups of employees were also excluded from the Hoist Plan. First, it is asserted, four employees who were between 55 and 60 at the time of the acquisition were excluded from the Hoist Plan because these employees allegedly would need Hoist's permission to work past the normal retirement age of 65 in order to fulfill the Hoist Plan's requirement of 15 years' credited service. The district court did not reach this question. We believe this contention is laid to rest by the following provision of the Hoist Pension Plan:

> Section 4.5 *Retirement.* The normal retirement age is sixty-five years, and the normal retirement date of a participant who has then completed fifteen years of credited service is the first day of the month coincident with or next following his attainment of the normal retirement age; the normal retirement date of a participant who has then not completed fifteen years of credited service is the first day of the month coincident with or next following his completion of fifteen years of credited service, but not later than the seventieth anniversary of the date of his birth. Each participant who has remained in the service of the employer until that date will be expected to retire upon his normal retirement date.

This provision of the Hoist Plan apparently contemplates that employees who must work

trustee, Northwestern National Bank of Minneapolis, to pay the Bros Plan assets to them, according to their respective interests under the trust. On October 25, 1971, Hoist requested the trustee to pay over the Bros Plan assets to Hoist, pursuant to the sale agreement between Bros and Hoist. In response to these conflicting claims, the trustee initiated this interpleader action, joining as defendants Hoist and a class consisting of the former Bros Plan participants.[2]

Hoist does not claim entitlement to the trust under that provision of the October 20, 1967, amendment granting to Bros' purchaser the power "to adopt This Plan, as amended, as its own." By offering the benefits of its own pension plan to substantially all former employees of Bros, the appellant, Hoist, claims entitlement to the disputed trust funds by satisfying that portion of the amendment of October 20, 1967, relating to the replacement of the Bros Plan by the Hoist Plan. That particular provision of the amendment, emphasized below, as we have already noted, reads:

In the event that the Company should enter into a transaction with another corporation (hereinafter called "such corporation") as a result of which all, or substantially all, of the employees of the Company become employees of such corporation, then such corporation shall have the power to amend This Plan and to adopt This Plan, as amended, as its own. *In the event that such corporation has in effect an employee pension plan or plans, qualified under Section 401 of the Internal Revenue Code, in which the participants in This Plan become participants, then such corporation may terminate This Plan and may cause the assets of The Fund to be transferred to the trust or other qualified funding medium then existing as a part of such qualified employee pension plan or plans[.]*

The district court rejected Hoist's contention, because Hoist's Plan excluded the five over-60 former Bros Plan participants who became Hoist's employees. The district court further determined that none of the trust provisions dealing with disposition of the assets upon termination of the trust applied to this situation, thus causing the trust to fail. The court below held that a resulting trust existed in favor of the former Bros employees under § 424 of the Restatement (Second) of Trusts,[3] and rejected Hoist's claim that the assets reverted to Hoist, as the successor in interest of Bros, the settlor. The district court thus denied Hoist any part of the trust assets, and awarded the entire fund, less trustee charges, to the class of former Bros Plan participants. We disagree with the district court's resolution of this controversy.

The controversy focuses on the phrase "in which the participants in This Plan become

---

past age 65 in order to satisfy the 15 years' credited service requirement will be allowed to do so, so long as they complete their 15 years before they reach age 70. Thus, at the time of the acquisition, it was possible for these four former Bros employees to qualify for a Hoist pension, and they cannot be considered to have been excluded from the Hoist Plan.

Appellees further contend that 28 former Bros employees who started work with Hoist after the acquisition, but who left or were terminated before the March 22, 1968, amendment to the Hoist Plan, were also excluded from the Hoist Plan. We disagree. The amendment to the Hoist Plan was made retroactive to the date of the acquisition of Bros, and had these 28 employees stayed on with Hoist, they would have become eligible for a Hoist pension. These 28 employees will not get Hoist pensions because they left Hoist's employ, not because the Hoist Plan amendment did not cover them.

Thus, the only Bros Plan participants who were excluded from the Hoist pension plan were the five over-60 former Bros employees.

2. The trustee also joined the liquidating trustee of Bros, Incorporated, now known as Sorb, Incorporated. These defendants, however, did not press any claim to the fund and are not involved in this appeal.

3. Section 424 reads as follows:

Where the owner of property transfers it upon a trust which fails, and he receives from a third person consideration for the transfer as an agreed exchange, there is a resulting trust in favor of the person who paid the consideration.

The district court deemed the consideration to have come from the employees in the form of their services to Bros.

participants" contained in the October 20, 1967, amendment to the Bros Plan. The appellee-employees contend, and the district court held, that this phrase required Hoist to include in the Hoist Plan every single one of the Bros Plan participants who was employed by Hoist upon the transfer of Bros' assets, and that Hoist's failure to comply with this condition divested Hoist of any right to trust assets. Hoist, on the other hand, asserts that participation by substantially all of the former Bros Plan participants in the Hoist Plan entitled Hoist to all of the Bros Plan assets. We adopt a third approach.

■ The solution to this controversy melds the doctrine of substantial performance with the law of third-party beneficiaries. The amendment to the Bros trust was a promise by Bros to transfer the assets of the Bros trust to Hoist if Hoist made all of the former Bros participants eligible to participate in the Hoist Plan. Obviously, Bros made this agreement with the intent to benefit its former employees, so the Bros Plan participants have the right to enforce this agreement. Under Minnesota law, creditor and donee third-party beneficiaries may enforce contracts, so long as it appears that the agreement was intended to benefit them. *See Hansen v. Proctor,* 246 Minn. 67, 74 N.W.2d 281 (1955); *LaMourea·v. Rhude,* 209 Minn. 53, 295 N.W. 304 (1940); Restatement of Contracts, § 133.

■ Although Hoist did not fully comply with its obligation to include all former Bros employees in its pension plan, we do not think that Hoist should be deprived of the entire Bros Plan trust fund. This is a clear case for application of the doctrine of substantial performance. All but five of the 117 Bros Plan participants who commenced employment with Hoist were in fact included in the Hoist pension plan. Those 112 Bros employees received all the benefits to which they were entitled under the October 20th trust agreement, and it would be unjust to award them any share of the Bros Plan assets. The five employees who were excluded from the Hoist Plan can be given their fair allocable share of the Bros Plan assets without divesting Hoist of the entire fund and unjustly enriching the other Bros Plan participants who transferred to Hoist. Should Hoist be deprived of all of the Bros Plan assets, it would be denied a great part of the bargain agreed upon with Bros. We do not think that the exclusion of these five over-60 former Bros employees should inflict such a forfeiture on Hoist. *See* Restatement of Contracts, §§ 274, 275.[4]

The judgment is reversed and the case is remanded to the district court. Upon remand, the district court shall award to the five excluded Bros Plan participants their pro rata shares in the trust assets based upon a fair mathematical or actuarial computation of the interest of each of these five over-60 employees in the fund, relative to the similarly computed value of the interest of all Bros Plan participants in the fund as of October 20, 1967, the date Bros ceased doing business. The amount re-

---

4. Section 274 reads, in part, as follows:

§ 274. FAILURE OF CONSIDERATION AS A DISCHARGE OF DUTY.

(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge. Section 275 reads as follows:

§ 275. RULES FOR DETERMINING MATERIALITY OF A FAILURE TO PERFORM.

In determining the materiality of a failure fully to perform a promise the following circumstances are influential:

(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) The greater or less hardship on the party failing to perform in terminating the contract;

(e) The wilful, negligent or innocent behavior of the party failing to perform;

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

maining after the award to the five over-60 employees shall be awarded to Hoist.

No costs shall be allowed on this appeal.