**BUTLER MANUFACTURING COMPANY, Respondent,**

v.

**Merrill MIRANOWSKI, d.b.a. M & M Construction, Appellant.**

No. C8–85–2274.

Court of Appeals of Minnesota.

July 15, 1986.

Michael J. McCartney, McCartney Law Office, Breckenridge, for respondent.

Dan Plambeck, Stefanson, Landberg, Plambeck & Geeslin, Moorhead, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Merrill Miranowski, d/b/a M & M Construction (Miranowski), appeals from the trial court's award of $5,226.74 to respondent Butler Manufacturing Company (Butler), and from its denial of Miranowski's offset claim in that amount. We reverse and remand.

## FACTS

Miranowski sells and installs grain handling systems and related products. D-Rockwell Manufacturing Co. (D-Rockwell) manufactured grain handling systems and Miranowski was one of its dealers. In about April 1980, Miranowski purchased a grain handling system from D-Rockwell and installed it at the Abercrombie Grain Elevator in Abercrombie, North Dakota. D-Rockwell warranted its products "against defects in material and workmanship for a period of one year from the date of invoice."

In July 1980, the Abercrombie Grain Elevator contacted Miranowski and informed him that a part in the grain handling system called a grain leg was defective. Miranowski then contacted D-Rockwell and informed the company of the defective part. Doyle Ditzenberger, the president and one of the two shareholders of D-Rockwell, told Miranowski to repair the grain leg and he would send a replacement part as soon as possible. Miranowski temporarily repaired the defective part at that time, and he permanently replaced the defective part in January 1981 during the elevator's off-season.

Miranowski testified that after he had finished the repair work at the end of January 1981, he sent D-Rockwell one bill for all of the work. The bill was admitted into evidence and described in detail the repair work that Miranowski did in July 1980 and January 1981.

The date on the bill was altered at some point to read "Feb 2st, 1981". It is unclear what the original date on the bill was. Miranowski testified that the bill was probably first prepared on February 10, 1981, and then back-dated to February 2, 1981. There is no clear explanation for the altered date in the record. Miranowski did not know why he would have back-dated it.

Miranowski testified that he specifically requested payment of the bill from Ditzenberger and Ditzenberger said he would take care of it, but D-Rockwell never reimbursed Miranowski for his repair work.

On February 2, 1981, D-Rockwell and Butler executed a purchase agreement through which Butler purchased substantially all of D-Rockwell's assets. From that date until October 1, 1983, Ditzenberger was employed by Butler. The purchase agreement included the following clause:

5. *Payment of Standard Warranty Claims.* As to Seller's standard express product warranty * * * by which Seller has agreed to repair or replace products which are defective, such repairs or replacements shall be made as follows:

(a) Seller will provide a liability reserve of $5,000 for all claims for such repair or replacement covering all products shipped prior to Closing.

(b) Buyer will pay all valid claims for such repair or replacements which are received by Buyer or Seller after Closing. The liability reserve set up in (a) above shall be assumed by Buyer and form a part of the liabilities enumerated * * * above.

(c) The amount of such reserve not expended by Buyer within one year from Closing shall be paid to Seller at that time. All amounts expended by Buyer in excess of such reserve within one year from Closing shall be deducted from the final payment due Seller at that date. Thereafter, Buyer shall have no other liability or obligation in connection with such standard expressed product warranty.

Miranowski learned about the sale of D-Rockwell to Butler in the spring of 1981. In July 1981, Miranowski purchased approximately $30,000 worth of equipment from Butler. Miranowski testified that he did not inform Butler of his claim against D-Rockwell because he thought that Ditzenberger, who was then employed by Butler, was taking care of his claim.[1]

At trial, Miranowski was not clear about when he actually notified a Butler employee, other than Ditzenberger, of his outstanding warranty claim. Miranowski testified that the first time he notified Butler of his claim was during a telephone conversation with Johnny Hill, a Butler accounting manager, on December 28, 1981. Hill testified that he became aware of Miranowski's claim on this date. Miranowski also testified that he thought he talked to Hill about his claim sometime before then.

Miranowski sent a check dated December 28, 1981, in the amount of $25,732.98 to Butler in payment of his outstanding debt less the amount that he claimed D-Rockwell owed him. When Miranowski received

1. D-Rockwell was not joined as a party in this action.

the canceled check back from his bank, he noted on his check that he had paid his account in full less $5,226.74 as an offset for his warranty claim. Miranowski also sent Butler a copy of the bill detailing the repair work he had done in Abercrombie.

At trial, Butler and Miranowski stipulated that there was a defect in the grain leg and that Miranowski's claimed offset amounted to $5,226.74.

After a short trial to the court, the trial court made its findings from the bench and never reduced them to writing. The court found that the warranty period began to run at the latest in April 1980 when Miranowski installed the grain handling system, and thus the warranty expired in April 1981. There is no dispute that the defect occurred in July 1980, within the one-year warranty period.

The court further found that Ditzenberger had notice of the defect within the one-year warranty period, but it determined that this notice did not constitute notice to Butler. The trial court reasoned:

> The fact remains that there were numerous conversations and never did Mr. Miranowski raise the defense of an offset against D. Rockwell until December 28th of 1981. If he had felt that he had an offset against Butler, it is not reasonable for this Court, or any reasonable person to assume that he would not have mentioned that. And there are various reasons to believe that he did not himself think he had any claim against Butler. The fact that he failed to mention it, the fact that he dealt only with Mr. Ditzenberger, the fact that he later added a memo to the check that he had paid which was self-serving and certainly suspicious, that he altered dates on his claim addressed to D. Rockwell, on February 10th, 1st, or 2nd, whenever it is, of 1981, clearly indicates to the Court that Mr. Miranowski, himself did not think he had a claim against Butler Manufacturing Company and that whether he learned that that was possible from his attorney or from thinking things through later, or whatever, he did not himself, consider

that he had a claim. He made no claim * * * known to Butler * * *, if he expects to take advantage of the agreement between Butler and D. Rockwell he has got to comply. Which clearly means that he's got to do something, ... not only have a defect within the year, but give notice of defect.

## ISSUE

Did the trial court err in denying Miranowski's claim of an offset against Butler?

## ANALYSIS

Miranowski did not make a motion for a new trial and he appeals from the judgment entered pursuant to the trial court's findings and conclusions. Thus, our review is limited to determining whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

■ We agree with Miranowski that the trial court erred in concluding that he was required to give Butler notice of his warranty claim within one year after he purchased the defective product from D-Rockwell. Miranowski gave notice well within the one-year warranty period to D-Rockwell, the company which had sold him the defective part. Miranowski's timely notice to D-Rockwell is not negated simply because he did not tell Butler about his claim until December 28, 1981.

■ The critical issue we must address is whether Butler's purchase of D-Rockwell's assets makes Butler liable for Miranowski's warranty claim. As a general rule, when one company sells or otherwise transfers all of its assets to another company, the transferee is not liable for the debts and liabilities of the transferor. *J.F. Anderson Lumber Co. v. Myers,* 296 Minn. 33, 37, 206 N.W.2d 365, 368 (1973). The general rule is inapplicable, however, when the transferee expressly or impliedly agrees to assume the transferor's debts and liabilities. *Id.* at 37–38, 206 N.W.2d at

368. *See also* Minn.Stat. § 302A.661, subd. 4 (1984) (limits liability for the debts and liabilities of the transferor to the extent provided in the agreement between the transferee and the transferor or to the extent provided by statute).

The agreement between D-Rockwell and Butler provides in paragraph 5(a) that D-Rockwell "will provide a liability reserve of $5,000 for all claims * * * covering all products shipped prior to Closing." Miranowski's claim clearly falls within this provision, since D-Rockwell shipped the defective grain leg to Miranowski in April 1980.

Paragraph 5(b) further provides that Butler will "pay all valid claims for such repair or replacements which are *received by* [Butler] or [D-Rockwell] *after* Closing." (Emphasis added). Although D-Rockwell had notice of Miranowski's claim prior to closing, the evidence indicates that D-Rockwell did not receive the full claim until sometime after Miranowski finished the repair work at the end of January 1981. The evidence is unclear as to whether D-Rockwell received that full claim before or after the closing on February 2, 1981. Miranowski testified that he sent D-Rockwell the bill that was admitted into evidence. The actual date of the bill, however, was altered and there is no evidence in the record indicating when D-Rockwell received it.

In light of this inconclusive evidence and the fact that the trial court did not address whether the purchase agreement between D-Rockwell and Butler would cover a claim such as Miranowski's, we must remand for additional findings and a determination of whether Miranowski's claim falls within paragraph 5(b) of the agreement. In order to make additional findings, the trial court must expand the record. If the trial court finds that D-Rockwell received Miranowski's claim after February 2, 1981, rather than before, then Butler is liable for Miranowski's warranty claim pursuant to the purchase agreement.

■ We reject the argument that Miranowski cannot derive any benefit from the purchase agreement. He is a typical third party beneficiary of the purchase agreement. A third party can recover as an "intended beneficiary" if recognition of third party beneficiary rights is appropriate and either the duty owed or the intent to benefit test is met. *Cretex Companies, Inc. v. Construction Leaders, Inc.*, 342 N.W.2d 135, 139 (1984). The "duty owed" test requires that the promissor's performance under the contract must discharge a duty otherwise owed the third party by the promisee. *Id.* at 138. *See also Hansen v. Proctor*, 246 Minn. 67, 71–72, 74 N.W.2d 281, 284 (1955). Here, the "duty owed" test is satisfied. Butler's payment of Miranowski's warranty claim would discharge the duty that D-Rockwell owes to him. *See also* 4 A. Corbin, Corbin on Contracts § 788, at 108–09 (1951) ("[w]here one sells his business * * * or other property and the buyer undertakes to pay the seller's debts, an action by a creditor lies against the buyer on his promise").

■ Miranowski's rights as a third party depend upon the terms of the purchase agreement. *Brix v. General Accident & Assurance Corp.*, 254 Minn. 21, 24, 93 N.W.2d 542, 544 (1958). The interpretation of the agreement is the same, whether the promisee or the third party is seeking enforcement. 4 Corbin on Contracts § 776, at 21. Thus, if the trial court finds that Miranowski's claim falls within paragraph 5(b) of the agreement, Butler is liable to Miranowski for the amount of his warranty claim.

We recognize that certain aspects of Miranowski's behavior in this matter were questionable. Nevertheless, his actions do not necessarily compel a denial of his warranty claim. Further, it is irrelevant whether Miranowski himself thought he had a valid claim against Butler.

■ Because Butler may still be entitled to judgment upon remand, we briefly address the other issues raised on appeal. Miranowski argues that he did not agree to pay any late payment charges and therefore the trial court erred in including such charges in Butler's judgment. Under the

doctrine of accounts stated, Miranowski would be liable for the late payment charges. There is evidence that he received invoices from Butler stating that a charge would be calculated on late payments. There is no evidence that Miranowski objected to the charges. Because of Miranowski's acquiescence in the charges, the law can imply a promise to pay those charges. *See American Druggists Insurance v. Thompson Lumber Co.,* 349 N.W.2d 569, 573 (Minn.Ct.App.1984) (citing *Meagher v. Kavli,* 251 Minn. 477, 487, 88 N.W.2d 871, 879 (1958)).

Miranowski also argues that the trial court erred in awarding prejudgment interest on the amount of the judgment representing the late payment charges. Miranowski bases his argument on Minn. Stat. § 549.09, subd. 1 (1984) which prohibits prejudgment interest awards on "that portion of any verdict or report which is founded upon interest, or costs, disbursements, attorney fees, or other similar items added by the court." The late payment charges do not fall into any of these categories. Accordingly, we do not find any error in the trial court's award of prejudgment interest on the late payment charges.

Finally, we note that the trial court intended to award prejudgment interest for the period following the effective date of section 549.09, which was July 1, 1984. The record indicates that the prejudgment interest was calculated from August 1, 1983. If on remand the trial court still awards Butler judgment against Miranowski, the judgment should include prejudgment interest accruing after July 1, 1984.

## DECISION

Miranowski gave timely notice of his warranty claim. We remand to the trial court for a determination of whether Miranowski's claim falls within paragraph 5(b) of the purchase agreement between Butler and D-Rockwell.

Reversed and remanded.