(No. 61412.—

*In re* ROBERT J. LENZ, Attorney, Respondent.

*Opinion filed October 18, 1985.*

MILLER, J., took no part.

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Robert B. Oxtoby, of Springfield, for respondent.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The respondent in this case, Robert J. Lenz, was admitted to the practice of law on November 16, 1963. On April 16, 1984, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against the respondent.

We will briefly set forth the factual scenario. For several years, the respondent had represented Mrs. Doris Alexander, as well as her husband, prior to his death, and had handled various legal and business matters for the couple. When her husband died, Lenz took care of various matters relating to Mr. Alexander's estate. Mrs.

Alexander had been extremely dependent on her husband, and when he died that dependence was transferred to Lenz, who testified that she called him as often as 20 times a day and would stop by his office several times in a single day.

Mrs. Alexander moved to Georgia in 1981, at which time she left Lenz in charge of the sale of her home. The contract sale of the house was made in October 1981, and on October 27, Lenz deposited the $9,900 down payment into his trust account. From this account he withdrew approximately $3,500 for the costs associated with the sale of Mrs. Alexander's home. On the same day, he wrote Mrs. Alexander a letter of explanation concerning the sale, the payments which had been made, and he concluded the letter with the following: "More to come later: please be patient." This was the last communication that Mrs. Alexander had from Lenz for more than six months, until May 1982, pursuant to inquiry by the Administrator.

Throughout this six-month period, Lenz was handling a personal injury case for Mrs. Adrian Garland, who was a paraplegic as a result of an automobile accident. Mrs. Garland's husband was unemployed and the family had a variety of other financial difficulties surrounding Mrs. Garland's personal injury case. Due to her physical infirmities, mobility was a serious problem, and Lenz located a used van with wheelchair-lift equipment which was available for $3,500. Mr. Garland assured Lenz he would have the money for the van on the Friday Lenz was to drive to Chicago to purchase the van. However, Mr. Garland told Lenz that he "missed the banker, but would get the money by Monday." Thereafter, Lenz purchased the van with a check for $3,500 drawn on the trust account. The following Monday, Lenz found out that Mr. Garland could not secure the loan or repay the $3,500. Instead of reimbursing the trust account from his own

personal funds, Lenz left this amount to continue as an advancement out of the trust account, which consisted of funds belonging to other clients, including Mrs. Alexander. Because of this withdrawal, the trust account was below the amount received from the down payment for approximately six weeks.

Mrs. Alexander wrote Lenz inquiring as to why she had not received the proceeds from the sale of her home, and Lenz failed to respond. On March 12, 1982, Mrs. Alexander complained in writing to the Attorney Registration and Disciplinary Commission regarding Lenz' conduct. The Administrator wrote Lenz but did not receive a response. On May 1, 1982, after receipt of the Administrator's second request for a response to the complaint, the respondent answered and enclosed a trust account check for the amount due Mrs. Alexander from the down payment on the sale of her home. The check was returned by the Administrator with a letter suggesting that Lenz contact Mrs. Alexander directly, and on or before May 24, 1982, Mrs. Alexander received the check from the respondent.

A hearing was held on the Administrator's complaint. A panel of the Hearing Board found that the Administrator had proved by clear and convincing evidence that Lenz' conduct constituted (1) a failure to keep all funds belonging to his client in an identifiable trust account in violation of Rule 9—102(a) of the Code of Professional Responsibility; (2) a failure to render an appropriate account to his client regarding funds coming into his possession on behalf of his client in violation of Rule 9—102(c)(3); (3) a failure to pay promptly funds in his possession to his client, which the client is to receive, in violation of Rule 9—102(c)(4); (4) a conversion of funds entrusted to him; and (5) conduct which tends to bring the legal profession into disrepute. (87 Ill. 2d R. 9—102.) Lenz admitted all violations charged.

At the close of its hearing, the Hearing Board stated:

"[C]learly disbarment would be too harsh. Further it is the opinion of the Panel that a suspension of his license would serve no useful purpose under the circumstances. It is the recommendation of the Panel that Respondent should be censured by the Supreme Court pursuant to Rule 771(g) of the Rules in Admission and Discipline of Attorneys."

The Administrator, as well as Lenz, filed exceptions to the Hearing Board's recommendation. The Review Board affirmed the Hearing Board's report but stated that the recommendation as to the measure of discipline was inappropriate. The Review Board recommended that Lenz be suspended for a period of one year. Lenz' exception to the Hearing Board's report and recommendation under the rules stands as his exception to the Review Board. (87 Ill. 2d R. 753(c).) The Administrator also filed exceptions to the Review Board's report and recommendation.

The only issue before this court is whether the respondent should be disciplined and, if so, what the discipline should be.

Findings of the Hearing Board and Review Board, based upon properly admissible evidence, are entitled to virtually the same weight as those of any other trier of fact. (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) After a review of the record, we conclude that the Administrator has proved by clear and convincing evidence that the respondent engaged in misconduct which warrants discipline. With regard to the appropriate sanction, while the recommendations of the boards may be considered, the final responsibility for imposing discipline upon an attorney rests with this court. (*In re Kink* (1982), 92 Ill. 2d 293, 301-02.) The purpose of a disciplinary proceeding is to safeguard the public, to maintain the integrity of the profession, and to protect the administration of justice

from reproach. (*In re Goldstein* (1984), 103 Ill. 2d 123, 131.) In determining the appropriate sanction to serve this purpose, this court endeavors to achieve uniformity in the application of discipline, but it also considers each individual case on its own merits. See *In re Nadler* (1982), 91 Ill. 2d 326, 333.

The Review Board, as well as the Administrator, cites a number of cases as relevant to the issue of what type of discipline is appropriate, referring to the aforementioned statement that uniformity and fairness require this court to compare the conduct of Lenz with that of other respondents. *In re Cleveland* (1981), 85 Ill. 2d 520; *In re Brody* (1976), 65 Ill. 2d 152.

While Lenz' misconduct is a serious matter, it cannot be analogized with the respondent's conduct in the cases of *In re Cleveland* (1981), 85 Ill. 2d 520, or *In re Brody* (1976), 65 Ill. 2d 152. In *Cleveland,* the respondent converted approximately $37,000 of his client's money which was held in escrow and used a portion of these funds to personally speculate on the commodities exchange. This court observed in that case:

"There is no doubt that the respondent commingled and converted the escrow funds for his personal use. They were used to satisfy income tax and other personal obligations and to speculate on the commodities exchange. The hearing panel found, at one period of the respondent's possession of the escrow funds, his personal use of them had reduced the fund to approximately $8,000." (*In re Cleveland* (1981), 85 Ill. 2d 520, 522.)

This court went on to note that the defense asserted by Cleveland was not raised in "good faith," and concluded that the sanction of suspension for one year as recommended to be "not inappropriate."

An obvious difference between the facts in *Cleveland* and the case at bar is the amount of money that was converted. However, the key distinction is that not only

did *Cleveland* involve conversion, but it also involved an attorney who commingled a client's funds for personal gain. In addition, Cleveland raised "bad faith excuses" to elude the discipline which he rightly deserved. In the case at bar, Lenz openly admitted his guilt and appeared before this court not with excuses but merely to contest the type of discipline to be imposed.

In *Brody*, the respondent converted to his own use $500 which was held in an escrow account and failed to make restitution for five years. This court held that Brody "exhibited a complete indifference to his clients' interest" and "demonstrated a complete want of professional responsibility in ignoring the almost excessive requests of the Attorney Registration and Disciplinary Commission." (*In re Brody* (1976), 65 Ill. 2d 152, 156.) Brody was suspended for one year.

Brody took five years to make restitution, whereas Lenz made restitution a short time after the Administrator's request for a response. Unlike Brody, Lenz demonstrated an obvious concern for Mrs. Alexander, by talking with her on the phone as often as 20 times a day and seeing her in his office several times in a single day. Lastly, Lenz cooperated fully with the Attorney Registration and Disciplinary Commission.

Admittedly, there are some similarities between the present case and *Cleveland* and *Brody*. However, the records in those cases lack the mitigating factors which are present in this case. We believe *In re Clayter* (1980), 78 Ill. 2d 276, and *In re Sherman* (1975), 60 Ill. 2d 590, are more analogous to the case at bar.

In *Clayter*, an attorney commingled earnest money which he held for parties to a real estate transaction and converted the money to his personal use. Clayter deposited the money in a realty company's bank account. Thereafter, the balance in that account fell below the amount of the funds in question on several occasions.

The court concluded that censure was the appropriate sanction in light of a record which disclosed no evidence of a dishonest motive; that the respondent had practiced law for almost 20 years with no other complaints of ethical infraction; that he had an outstanding record of involvement in community service programs; and that there was testimony as to his good reputation by character witnesses of undeniable integrity.

Likewise, in *Sherman* this court held that it was improper for an attorney to withhold escrow funds as legal fees or to commingle the escrow funds with personal funds. (60 Ill. 2d 590, 593.) However, the court concluded that censure was the proper sanction where the attorney had since remitted all funds due his client; there was no other evidence of unprofessional conduct in the attorney's 20-year career; and where the client had not complained of inadequate legal representation.

The professional misconduct in both *Clayter* and *Sherman* is similar to that presented in the case at bar. Moreover, the mitigating factors in this case equal, if not exceed, those contained in *Clayter* and *Sherman*; thus a similar sanction is appropriate.

The seriousness of the misconduct is on one side of the scale, while the mitigating factors are on the other. Lenz readily admits his misconduct:

> "I know that lawyers should not do what I did. Those were not Adrian Garland's funds that I advanced. At the time I did it, I felt a great urgency to help this young woman. She had this personal tragedy and family complications and it was my belief that would be taken care of on the following Monday."

Lenz flatly stated that he appeared before this court to "discuss penalty, not excuse." However, in order to discuss penalty, mitigating factors must be taken into account. These factors include the length of time in practice, previous misconduct, whether and when restitution

is made if it is owing, community service, *pro bono* legal work, and the testimony of character witnesses and professional colleagues. See *In re Cohen* (1983), 98 Ill. 2d 133, 144-45.

This was an isolated act of professional misconduct during the respondent's 20 years as a lawyer. In this case, restitution was made, and the trust account only had insufficient funds for six weeks. Upon receipt of the Attorney Registration and Disciplinary Commission's letter, the respondent sent the money he owed to Mrs. Alexander to the Commission and then subsequently to Mrs. Alexander.

Two additional mitigating factors are Lenz' *pro bono* legal work and community service, which are impressive. Lenz was a national board member of the YMCA and participated in a leadership role in several international councils of that organization. He received a distinguished service award from the Junior Chamber of Commerce, as well as serving on boards of various charitable organizations. He also served as a trustee of the University of Illinois from 1974 to 1980 and served in leadership capacities in phases of that Board's activities. Most notably, Lenz worked for the Illinois Senate in the drafting of legislation and developed a reputation as an authority on banking law.

The respondent's character witnesses included Bernard Wall, an attorney for 50 years. Wall testified to having known the respondent since the early 1960's and stated that Lenz had always had a good reputation in the legal field.

In addition, William Harris testified on behalf of the respondent. Harris is currently the Commissioner of Banks for the State of Illinois. He has served in the Illinois House of Representatives for six years and served as an Illinois senator for 16 years, during which time he was president and majority leader of the Senate. Harris

testified to having known Lenz since 1963, when Lenz was working for Senator Cecil Partee, and that during that time Lenz had an "extremely good" reputation.

Other factors which weigh in Lenz' favor include the Hearing Board's findings:

> (1) "[F]rom the time he [Lenz] responded to the Administrator his cooperation has been very good. He has submitted all documentary evidence requested and responded to all requests for information and appears to be fully repentant for his misconduct."

> (2) "To compensate Ms. Alexander for her loss of interest on her funds, [Lenz] voluntarily waived a fee of $900 which he would otherwise have charged for services in connection with her husband's estate."

> (3) "Indeed [Lenz] gives the appearance of a highly capable and highly personable man and apparently very successful and generally well motivated."

Although these mitigating factors weigh heavily in the respondent's favor, his misconduct cannot be ignored. It is the risk of the loss of the funds while they are in the respondent's possession, and not only their actual loss, which Rule 9—102(a) is designed to eliminate. See 87 Ill. 2d R. 9—102(a); see also *In re Saladino* (1978), 71 Ill. 2d 263, 276.

Having weighed all factors, the appropriate sanction is censure.

*Respondent censured.*

JUSTICE MILLER took no part in the consideration or decision of this case.