(No. 63902.—

*In re* ROBERT JOSEPH VAVRIK, Attorney,
Respondent.

*Opinion filed May 22, 1987.—Rehearing
denied October 5, 1987.*

410

GOLDENHERSH, J., took no part.

Robert A. Merrick, Jr., of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins and Donald L. Bertelle, of Collins & Bertelle, of Chicago, for respondent.

JUSTICE MORAN delivered the opinion of the court:

On October 8, 1984, respondent, Robert Joseph Vavrik, after entering a plea of *nolo contendere*, was

convicted of one count of grand theft, first degree, in the circuit court of Orange County, Florida. He was sentenced to eight years' probation and ordered to pay restitution. Thereafter, the Administrator of the Attorney Registration and Disciplinary Commission filed a petition with this court pursuant to Rule 761 (103 Ill. 2d R. 761) requesting that the respondent be suspended until further order of the court. On March 28, 1985, an order suspending respondent was entered.

On April 29, 1985, the Administrator filed a one-count complaint with the Hearing Board, recounting the circumstances of the conviction and charging that respondent's misconduct involved moral turpitude, deceit and dishonesty which was prejudicial to the administration of justice. The Hearing Board found respondent guilty and recommended that he be disbarred. The respondent then filed exceptions with the Review Board, which adopted the findings of the Hearing Board and recommended that he be disbarred. Respondent acknowledges that discipline is warranted but contends that disbarment is too severe a sanction.

Three issues are raised on appeal: (1) whether the circumstances of his conviction warrant disbarment; (2) whether sufficient evidence in mitigation was introduced to warrant a lesser sanction; (3) whether disbarment would conflict with previous decisions of this court.

Respondent was licensed to practice law in Illinois in 1958 and from 1960 to 1976 he managed his family's trucking business, only rarely practicing law. In 1977 the family business failed and he moved to Florida. In Florida he held various warehouse jobs until August 1980, when he was employed by Pivco Distributing Company, which later became Dominion Title Services, Inc. He was eventually named president of Dominion while its owner, Eric Gavel, served as secretary and treasurer. Respondent's duties included conducting real estate closings and

collecting and disbursing escrow funds. In this regard, he was a signatory on Dominion's operating and escrow accounts.

In September of 1981 Dominion was retained to conduct a real estate closing for the Seventh Day Adventists Church. Pursuant to this employment, Dominion received, from a representative of the church group, a check in the amount of $36,000, which was deposited in the escrow account.

Between September 1981 and March 1982 the respondent and Eric Gavel issued 15 to 20 checks against the escrow account. Respondent would make checks payable to fictitious payees, Gavel would forge the payee's endorsement and then respondent would endorse the checks and cash them. The funds were then used to pay the business and operating expenses of Dominion. A total of $53,000 was misappropriated in this manner, of which the respondent received $11,350. In March of 1982 respondent issued a check drawn on the Dominion escrow account for $30,820 payable to the church group pursuant to the terms of the real estate closing. Upon presentment, the check was dishonored for insufficient funds and a criminal investigation ensued.

Respondent's first exception is that the circumstances of his conviction warrant a sanction less then disbarment. In support of this argument, respondent asserts that he was not acting as an Illinois attorney at the time of the offense, that he was sentenced pursuant to a Florida statute which vacates the conviction following probation and that he was entitled to the money he received as salary.

This court has consistently stated that conviction of a crime involving moral turpitude is conclusive evidence of an attorney's guilt and a ground for disbarment (*In re Fumo* (1972), 52 Ill. 2d 307, 309; *In re Eaton* (1958), 14 Ill. 2d 338, 340; *In re Carr* (1941), 377 Ill. 140, 143), and

that moral turpitude is shown when, as here, the crime involves fraud or fraudulent conduct (*In re Teitelbaum* (1958), 13 Ill. 2d 586, 588; *In re Needham* (1936), 364 Ill. 65, 70). However, since it is not the conviction itself which gives rise to discipline but the underlying conduct, it is essential that we consider all of the circumstances attendant the conviction. *In re Crane* (1961), 23 Ill. 2d 398, 400-01.

Respondent argues that his conduct was somehow less culpable because he was not acting as an Illinois attorney at the time of the incident. He stresses that the embezzled funds were not held by him as an attorney. This argument is without merit. It is not necessary that an attorney's misconduct be in the discharge of his professional duties in order to warrant discipline; any act which evidences a want of personal honesty or integrity may be sufficient to warrant disbarment. (*In re Melin* (1951), 410 Ill. 332, 337.) An attorney's misconduct falling outside his professional capacity cannot simply be ignored to the detriment of the profession and the public.

Respondent attaches significance to the fact that the Florida sentencing statute vacates the conviction following probation. However, the appropriate discipline of an attorney following a conviction will not be contingent upon the technicalities of the sentencing procedure. In *In re Patt* (1980), 81 Ill. 2d 447, 452, this court considered the significance of an attorney's conviction under a similar statute and stated, "That respondent's conviction was later vacated and the charge dismissed pursuant to a statutory provision pertaining to probation does not alter the fact that there has been an adjudication which finally determined that respondent committed an act of embezzlement, a crime involving moral turpitude."

Respondent describes the money he received as salary and as repayment of a loan and argues that this somehow makes his misconduct less egregious. We disagree.

Whatever entitlement he may have had from Dominion to receive a salary or repayment of a loan had no bearing on his duty to protect the funds entrusted to him. Dominion's obligations to respondent cannot shelter him from his wrongful acts. He knowingly converted the funds to his own use and his mere characterization of the funds as salary will not change this simple truth.

Respondent's second exception is that mitigating factors are present which warrant a lesser sanction. He noted that he has a record of no previous discipline, that he is making restitution, that he has been involved in church activities and that he was suffering from the strains of a recent divorce and bankruptcy at the time of his misconduct.

We have stated that mitigating factors "include the length of time in practice, previous misconduct, whether and when restitution is made if it is owing, community service, *pro bono* legal work, and the testimony of character witnesses and professional colleagues." (*In re Lenz* (1985), 108 Ill. 2d 445, 453-54.) Here, the significance of respondent's record of no previous misconduct must be considered in light of his limited practice. Although he has been licensed to practice since 1958, his practice was limited to occasional traffic matters and other matters incidental to his trucking business. His misconduct was not then "an isolated aberration on a long and otherwise honorable record of devotion to the practice of law" (*In re Fumo* (1972), 52 Ill. 2d 307, 310), but a grave wrongdoing early in his professional life. Under the circumstances, the import of his unblemished record is minimal. Similarly, the fact of respondent's restitution is diminished by its involuntary nature. Restitution is being made only pursuant to the terms of the respondent's probation and, moreover, it will take several years before restitution is made in full.

A social acquaintance testified that respondent appeared to be under emotional strain at the time of the misconduct. She acknowledged, however, that this assessment was based upon infrequent correspondence and a single social gathering in December of 1981. She also stated that respondent served as chairman of the board of education for St. Patrick's Parish from 1969 to 1976.

During the time of respondent's involvement in the fraudulent scheme he had been recently divorced and had filed for bankruptcy. He urges that this also be taken into account in mitigation. While we are not insensitive to the disruption brought about by such personal and financial difficulties, it cannot serve to relieve him of culpability. On this record, we cannot say that sufficient evidence has been offered to mitigate the seriousness of his misconduct.

Before the Hearing Board, respondent testified that when he issued the check to the church group he was unaware that there were insufficient funds to cover the check. He explained that he had no knowledge of the balance in the account because after Dominion had relocated, Gavel had the bank statements sent to a post office box rather than to the new address. However, on cross-examination the Administrator produced the statements and the respondent admitted that they had been sent to the new address. Respondent now contends that it has not been shown that he testified falsely but only that he was mistaken as to where the statements were sent.

We have held that an attorney's giving of false testimony in a hearing demonstrates a further unfitness to practice law. (*In re Rosenberg* (1953), 413 Ill. 567, 576; *In re Stillo* (1977), 68 Ill. 2d 49, 55.) In our view, it is unlikely that respondent was mistaken as to where the statements were sent. During the six months in question, the statements were mailed to Dominion, and it

taxes our credulity to suppose that respondent, as president, never had occasion to inspect them during this period. Notwithstanding his duties as president, one might also suppose that he would have a natural interest in learning the balance of an account from which he was wrongfully taking money. We consider respondent's false testimony in aggravation of his misconduct.

Finally, respondent argues that disbarment is inappropriate since discipline has rarely reached the level of disbarment in our prior cases dealing with attorneys convicted of crimes. He cites numerous attorney conviction cases in which the discipline was only censure or suspension and argues that his misconduct was equivalent to or less egregious than that misconduct in those cases. The cases cited, however, do not involve similar misconduct. In *In re Thebus* (1985), 108 Ill. 2d 255, the respondent was censured for a conviction for failure to file an employer's quarterly tax return and we specifically held that no conversion took place. In *In re Williams* (1986), 111 Ill. 2d 105, we imposed a two-year suspension for conviction of mail fraud arising out of an insurance fraud scheme, though we noted that substantial mitigating factors were present. *In re Nadler* (1982), 91 Ill. 2d 326, involved a three-year suspension for conviction of income tax evasion in connection with the conversion of a client's funds, but we noted that respondent had made restitution in full prior to conviction and that substantial character evidence was introduced in mitigation. We do not find any of these cases sufficiently analogous to the present case to be instructive. None of them involved the type of deliberate, unmitigated conversion of clients' money present here. Furthermore, while considerations of predictability and fairness suggest strict uniformity in the imposition of sanctions, we must also judge each case on its own unique facts and circumstances. *In re Enstrom* (1984), 104 Ill. 2d 410, 416.

Respondent's conduct indicates a disregard for personal integrity and honesty. His misconduct, while not in his professional capacity, strikes at the very heart of an attorney's duties of trust and loyalty. In order to protect the public and maintain the integrity of the legal profession, we therefore conclude that respondent be disbarred from the practice of law.

*Respondent disbarred.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.