(No. 67039.—)

*In re* BRIAN J. DEMUTH, Attorney, Respondent.

*Opinion filed December 15, 1988.*

4

Scott Renfroe, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

James M. D'Amico, of LaGrange, for respondent.

JUSTICE STAMOS delivered the opinion of the court:

This is a disciplinary proceeding against respondent, Brian J. Demuth. On March 3, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a three-count complaint with the Hearing Board, charging respondent with violations of several provisions of the Code of Professional Responsibility (the Code) (107 Ill. 2d R. 1—101 et seq.). In a report and recommendation filed November 4, 1987, the Hearing Board found that respondent had committed the following misconduct: engaging in a conflict of interest by representing both parties to a loan transaction; neglect of a legal matter; conversion; and entering into a prohibited business transaction with a client. The Hearing Board recommended that respondent be suspended from the practice of law for 18 months and until further order of court.

Both the Administrator and respondent filed exceptions to the report and recommendation. By order dated March 18, 1988, the Review Board affirmed the findings and conclusions of the Hearing Board, but recommended respondent be suspended for a period of two years. We granted respondent's petition for leave to file exceptions

to the Review Board's recommendation. 107 Ill. 2d R. 753(e)(5).

## FACTS

Respondent was admitted to practice law in Illinois on April 29, 1977. The transactions that gave rise to this proceeding occurred in 1980. They involved three individuals: respondent, Charles Pinckard, and Dr. Sabah Khalifa. (In addition, respondent introduced testimony concerning a transaction involving Pinckard, Khalifa and another individual, Dennis Jenkins.) Respondent and Pinckard met and became friends when Pinckard was represented by a law firm where respondent was employed as an attorney. Khalifa was a business partner, friend, and client of respondent. Respondent performed various legal services for Khalifa both before and after the transactions at issue.

We summarize the evidence adduced at the hearing as it relates to each instance of misconduct.

### Conflict of Interest; Neglect of a Legal Matter

In the fall of 1980, Pinckard approached respondent in an effort to obtain financing for repairs to a building Pinckard owned in the Hyde Park area of Chicago. In a series of conversations, respondent and Khalifa discussed the possibility of Khalifa's loaning $18,000 to Pinckard so he could undertake to repair his building. Eventually, Khalifa agreed to lend $18,000 to Pinckard. Khalifa would receive 20% interest on the loan, or $4,000 if the property were sold within six months. Khalifa was also to have a security interest in the property.

Respondent, Pinckard and Khalifa met on October 15, 1980, in respondent's office to consummate the loan transaction. Khalifa produced a cashier's check payable to himself in the amount of $18,000. Respondent affixed on the check a restrictive endorsement that read as fol-

lows: "pay to the order of Brian J. Demuth escrow account." According to respondent, this was done at Pinckard's request because Pinckard did not have a bank account and had no convenient means of negotiating the check. Khalifa endorsed the check at respondent's request and then returned the check to respondent. Pinckard testified that he did not see or receive the check. At the meeting, Pinckard executed a promissory note. Respondent deposited the cashier's check into his escrow account on or about October 15.

On October 15, 1980, respondent told Khalifa that respondent would prepare and file the security documents on Pinckard's property to secure Khalifa's loan. Respondent drafted mortgage documents and had them executed by Pinckard and Khalifa on October 15, 1980. However, these and other documents necessary to create a security interest for Khalifa were never filed.

Also on October 15, 1980, Khalifa asked respondent what respondent was getting out of the loan transaction; respondent replied that he would receive a few hundred dollars from Pinckard. Ultimately, Pinckard received from respondent $16,000 in a series of payments as proceeds of the loan. Pinckard testified that respondent charged him $2,000 as a finder's fee. He also testified that any funds he received from respondent were proceeds of the loan from Khalifa and that he never received a personal loan from respondent. Respondent concedes he retained $2,000. He maintains, however, that he only received a few hundred dollars for his work on the loan transaction. During oral argument before this court, his counsel asserted that the balance of the $2,000 was money respondent was entitled to in repayment of loans he had made to Pinckard.

Khalifa and Pinckard each testified that respondent was acting as his attorney regarding the loan transaction.

In 1982, respondent discovered that the documents necessary to perfect Khalifa's security interest had never been filed; he promptly informed Khalifa. Thereafter, apparently in an attempt to remedy this situation, respondent suggested a transaction between Pinckard and Dennis Jenkins. Jenkins was a contractor who had an interest in the property, and was a client of respondent. Khalifa consented to respondent's suggestion. Respondent prepared an agreement which was executed by Pinckard and Jenkins. The property was deeded out of the land trust and into Jenkins' name, and Jenkins applied for a $70,000 loan. The money was to be applied to real estate taxes on the property and to repay the Khalifa loan. The loan was made and the real estate taxes were paid, but for reasons that are unclear, Khalifa did not receive any of the proceeds.

Pinckard never repaid the Khalifa loan. In 1985, Khalifa obtained a judgment against Pinckard, but has been unable to collect.

## Conversion

It is undisputed that Pinckard did not receive the loan proceeds in a lump sum. On October 15, 1980, Pinckard received $2,000 from respondent. Pinckard testified that he received funds from respondent from time to time from October 1980 through June or July 1981, and that he never received more than $1,000 at a time after December 1980. Pinckard also testified that on two occasions, in October and November 1980, when Pinckard asked respondent for funds, respondent told him the funds had not yet cleared. On one of these occasions, Pinckard asked respondent why he was receiving the money in "dribbles and drabbles," and respondent replied that he had set up the loan and Pinckard just had to go along with the way the money was issued to him. As we explain more fully below, respondent contends

that Pinckard's testimony on these matters is not credible.

Between October 21 or 22, 1980, and November 13, 1980, respondent withdrew $15,150 from the escrow account in the form of cash withdrawals or checks made payable to himself or cash. Between November 13 and November 25, 1980, the balance in the escrow account was 11 cents.

*Prohibited Business Transactions with a Client*

In 1980, respondent borrowed a total of $11,600 from Khalifa on two separate occasions. On neither occasion did respondent advise Khalifa to consult another attorney. He did not discuss terms of the loans, provide immediate security for them, or disclose his own financial condition. Evidence was introduced tending to show that respondent was in financial difficulty at the time.

Khalifa eventually filed a lawsuit against respondent, in part to collect repayment of these loans. Respondent has made restitution to Khalifa.

## DISCUSSION

The principles governing our review of the Board's report and recommendation are well established. The Administrator bears the burden of proving by clear and convincing evidence that respondent engaged in the misconduct with which he is charged. (107 Ill. 2d R. 753(c)(6).) The findings of fact made by the Hearing Board are entitled to virtually the same weight as the findings of any initial trier of fact. (*E.g., In re Anglin* (1988), 122 Ill. 2d 531, 538 (and cases cited therein).) Deference is accorded to findings of fact, for the Hearing Board is able to observe the demeanor of witnesses, judge their credibility and evaluate conflicting testimony. (*In re Anglin* (1988), 122 Ill. 2d 531, 538.) We turn now to an examination of each instance of misconduct.

Respondent concedes that he is subject to discipline for neglecting to ensure that the documents necessary to perfect Khalifa's security interest were filed. Therefore further discussion of this charge is unnecessary.

Respondent denies that he represented conflicting interests in connection with the loan transaction. Rule 5—105 of the Code (107 Ill. 2d R. 5—105) provides:

> "(a) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under Rule 5—105(c).
>
> \*\*\*
>
> (c) In the situations covered by Rules 5—105(a) and (b), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Respondent contends that there was no conflict of interest for the following reasons. The object of all parties was to sell the Hyde Park property and respondent acted at all times in furtherance of this objective; he had no direct interest in the transaction and never preferred his interests over those of the parties to the transaction; and he never preferred the interest of one party over the other. In addition, at oral argument before this court, respondent (through his attorney) took the position that neither Khalifa nor Pinckard was respondent's client in the loan transaction; rather, respondent was acting merely as a businessman. Respondent's contentions lack merit.

The record supports the Hearing Board's finding that both Pinckard and Khalifa reasonably believed respondent was acting on behalf of each as his own attorney. It is obvious that a lender and borrower have conflicting in-

terests; respondent's contention that all parties shared a common interest is simply erroneous. The record supports the Board's conclusion that respondent did not make full disclosure to either client, advise either of the potential conflict, or advise either client he was free to seek independent counsel. The fact that both clients were present at the October 15, 1980, meeting certainly does not satisfy respondent's obligations under Rule 5—105 to make full disclosure and obtain consent.

In addition, the Hearing Board found that respondent charged Pinckard $2,000 as a finder's fee (which respondent took out of the $18,000 loan) and that initially respondent did not inform Khalifa. The only evidence to the contrary is respondent's own assertion and Khalifa's testimony that respondent told him respondent would receive a few hundred dollars. The Board's finding is amply supported by Pinckard's testimony that he paid $2,000, and that he never received loans from respondent.

Finally, we address respondent's contention that he did not violate Rule 5—105 because he did not prefer the interests of one client over another. We rejected a similar contention in *In re Rosin* (1987), 118 Ill. 2d 365, where we addressed Rule 5—101(a) of the Code (107 Ill. 2d R. 5—101(a)). That rule prohibits a lawyer from accepting employment, unless the client has consented after full disclosure, if the exercise of the lawyer's professional judgment "will be or reasonably may be affected by" his own interests. We pointed out in *Rosin* that Rule 5—101(a) "does not require a showing that the respondent's professional judgment was *actually* compromised by a conflict of interest." (Emphasis in original.) (*Rosin*, 118 Ill. 2d at 381.) The same is true of Rule 5—105; that rule applies as long as the lawyer's independent professional judgment "will be or is *likely to be* adversely affected" by his representation of multiple clients. (Em-

phasis added.) (107 Ill. 2d Rules 5—105(a), (b); see *Rosin*, 118 Ill. 2d at 381.) Moreover, we cannot say with certainty that respondent's professional judgment was not adversely affected, in light of the manner in which respondent disbursed the funds to Pinckard from the escrow account (in "dribbles and drabbles," in Pinckard's words), and respondent's failure to perfect Khalifa's security interest.

In sum, we find that the Administrator proved by clear and convincing evidence that in representing both Pinckard and Khalifa in the loan transaction, respondent violated Rule 5—105.

The record also supports the Board's conclusion that respondent violated Rule 5—105 of the Code regarding the Pinckard-Jenkins transaction. He arranged for the Hyde Park property to be deeded out of the land trust for the benefit of one client, Jenkins, when he knew that another client, Khalifa, was owed an obligation that was supposed to have been secured by the property. Although Khalifa agreed to the transaction, this consent was not given after full disclosure by respondent. Respondent failed to advise his clients of the conflict or that they had a right to retain independent counsel. Thus the requirements of Rule 5—105 were not met.

We next address the conversion charge. Respondent contends that the record does not support the Board's finding that he converted funds. His position is that Pinckard received all the money to which he was entitled prior to the date the escrow account fell to 11 cents. He contends that Pinckard's testimony to the contrary lacks credibility, and in support points to an affidavit signed by Pinckard in 1984 in which he states he received all the loan proceeds "as he [Pinckard] directed." Further, respondent maintains in this court that it may be inferred that the money withdrawn by respondent from the escrow account in October and November 1980 was

given to Pinckard. (Neither respondent nor Pinckard kept any records reflecting the dates on which the money was disbursed to Pinckard.)

The inference which respondent urges us to draw is unsupported by anything in the record, other than respondent's answer to the complaint in which he denied converting funds. As we have said, credibility determinations are for the Hearing Board to make and are entitled to a good deal of deference. The Hearing Board was entitled to believe Pinckard's testimony that he continued to receive funds from respondent for several months after the balance in the escrow account fell to 11 cents. We accept the Hearing Board's finding on this disputed question of fact.

Pinckard eventually received all the money to which he was entitled. Nevertheless, when an account balance falls below the amount owed to a client, a conversion has occurred. (*In re Holz* (1988), 125 Ill. 2d 546, 555-56 (and cases cited therein); *In re Grant* (1982), 89 Ill. 2d 247, 251.) The Hearing Board's finding of conversion is supported by clear and convincing evidence.

We next address the Board's conclusion that respondent violated Rule 5—104(a) of the Code (107 Ill. 2d R. 5—104(a)). Rule 5—104(a) provides as follows:

> "A lawyer shall not enter into a business transaction with a client if they have conflicting interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

The Hearing Board found that respondent violated this rule by obtaining loans from his client Khalifa without obtaining his client's consent after full disclosure. (See *In re Goldstein* (1984), 103 Ill. 2d 123 (Rule 5—104 violated where attorney obtained loans from four clients for his personal use, without disclosing his financial situation or advising them to seek other counsel; attorney

suspended for one year).) The fact that Khalifa was also respondent's friend and business partner does not alter respondent's obligations under the rule. We find that the Board's conclusion that respondent entered into a prohibited business transaction with a client is supported by clear and convincing evidence.

Finally, the record supports the Board's conclusion that the evidence clearly and convincingly reflects that respondent put his interests above those of his clients.

We turn now to the appropriate sanction. The decision of what sanction is appropriate in a disciplinary proceeding rests with this court. (*In re Harris* (1982), 93 Ill. 2d 285, 296.) This determination is to be made in light of the purposes of our disciplinary process, which are to maintain the integrity of the legal profession, protect the administration of justice from reproach, and safeguard the public. *In re Himmel* (1988), 125 Ill. 2d 531, 544.

The Administrator contends that respondent's failure to admit he engaged in misconduct (other than neglect of a legal matter) and his consequent lack of contrition demonstrate that he does not understand the ethical obligations by which an attorney must be guided. We tend to agree. The Code of Professional Responsibility is not precatory; its rules are mandatory rules of conduct. Attorneys who fail to understand them or follow them do so at their peril. (See *In re Holz* (1988), 125 Ill. 2d 546, 560, citing *In re Cheronis* (1986), 114 Ill. 2d 527, 535.) An attorney may not unilaterally decide that the rules are inapplicable because, for example, the parties he is dealing with are also friends and business partners. These concerns weigh in favor of a lengthy suspension. (We note that we generally reserve the sanction of suspension until further order of this court for those cases where the disciplined attorney is emotionally unstable. *In re Grant* (1982), 89 Ill. 2d 247, 255.)

In addition, one client, Khalifa, suffered actual loss and was put to the expense and inconvenience of bringing suit against respondent to recover this loss. As for Pinckard, although he eventually received all the money to which he was entitled, he was exposed to a risk of loss when respondent withdrew funds from the escrow account for purposes other than disbursing them to his client. See *In re Bizar* (1983), 97 Ill. 2d 127, 132 (attorney suspended for one year for similar misconduct; rejecting contention that only censure was warranted because clients received all funds to which they were entitled); see also *In re Saladino* (1978), 71 Ill. 2d 263, 276.

On the other hand, some mitigating factors are present. The misconduct occurred eight years ago when respondent had been in practice for three years, and he has not been charged with any other misconduct in his 11-year career. A character witness for respondent testified to respondent's good reputation in the community for honesty and integrity. Respondent is active in community affairs and various youth groups. He has made restitution to Khalifa, although this was not done until after Khalifa filed suit. (See *In re Williams* (1986), 111 Ill. 2d 105, 117 (mitigating factors considered by this court include length of time in practice, previous misconduct, whether and when restitution is made if it is owing, community service, and testimony of character witnesses, quoting *In re Lenz* (1985), 108 Ill. 2d 445, 453-54).) Although we have considered serious personal problems to be a mitigating factor (*e.g., In re Masters* (1982), 91 Ill. 2d 413, 428 (illness and death of respondent's wife)), we reject respondent's contention that his status as a single person and his self-described unstable social life at the time constitute mitigating factors.

We have stated on numerous occasions that we endeavor to achieve uniformity in imposing discipline, but

that we also consider each individual case on its own merits. (*E.g., In re Lenz* (1985), 108 Ill. 2d 445, 451.) Respondent's misconduct is serious, and it appears he still does not fully understand his ethical obligations. Some mitigating factors are present, notably his otherwise unblemished record and the fact that the misconduct occurred eight years ago. We conclude that the purposes of our disciplinary process will be adequately served by a lesser sanction than that recommended by the Review Board. After reviewing decisions of this court involving similar misconduct and weighing the mitigating and aggravating factors, we judge that an appropriate sanction is the suspension of respondent from the practice of law for a period of one year.

Accordingly, it is ordered that respondent be suspended from the practice of law for one year.

*Respondent suspended.*