# Illinois Official Reports

## Appellate Court

---

### *Prospect Funding Holdings, LLC v. Saulter*, 2018 IL App (1st) 171277

---

| | |
|---|---|
| Appellate Court Caption | PROSPECT FUNDING HOLDINGS, LLC, Plaintiff-Appellant, v. KEENAN J. SAULTER and SAULTER TARVER PC, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-17-1277 |
| Filed | March 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-3848; the Hon. Patrick J. Sherlock, Judge, presiding. |
| Judgment | Affirmed; opinion referred to the ARDC. |
| Counsel on Appeal | Robert J. Franco, Scott O. Reed, and Rachel V. Bassett, of Franco & Moroney, LLC, of Chicago, for appellant.<br><br>Curtis J. Tarver II and Keenan J. Saulter, of Saulter Tarver P.C., of Homewood, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Neville concurred in the judgment and opinion.<br>Justice Mason specially concurred, with opinion. |

**OPINION**

¶ 1      This case raises issues of first impression concerning an attorney's liability to a business that loans a client money to be repaid, plus fees and interest, from any settlement or judgment. Attorney Keenan J. Saulter arranged for his client, Angela Wright-Housen, the plaintiff in a wrongful death lawsuit, to borrow $25,000 from Prospect Funding Holdings, LLC (Prospect), under a purchase agreement. The agreement provided that any disputes were to be heard in Hennepin County, Minnesota, and to be governed by Minnesota law. Wright-Housen also signed an irrecovable letter of direction instructing Saulter to hold settlement money in his client trust account and to pay Prospect before disbursing settlement money to her. Saulter signed an attorney acknowledgement agreeing to abide by Wright-Housen's instructions.

¶ 2      When the wrongful death case settled and Wright-Housen failed to repay Prospect, Prospect sued her and Saulter in Minnesota. The Minnesota court dismissed Saulter on jurisdictional grounds, finding Saulter not a party to the purchase agreement so the forum selection clause did not apply to him. Wright-Housen did not appear, and the court entered a default judgment against her. When Wright-Housen failed to satisfy the default judgment, Prospect sued Saulter in Illinois for breach of contract and professional negligence. Prospect argued that Saulter breached his agreement to abide by his client's letter of direction and his fiduciary and professional duties by failing to maintain the settlement funds in his trust account and to repay Prospect. The trial court granted Saulter's motion to dismiss, finding Prospect's agreement with Wright-Housen was a contract for champerty, which Minnesota law prohibits.

¶ 3      Prospect argues the trial court should not have dismissed the case because (i) when the Minnesota court entered a default judgment against Wright-Housen, it found the purchase agreement valid and an Illinois court must give full faith and credit to that judgment, (ii) the Minnesota choice of law provision does not apply to the letter of direction and, even if Minnesota law does apply, Saulter cannot raise champerty as a defense as he was not a party to the purchase agreement, and (iii) the Illinois Rules of Professional Conduct obligated Saulter to hold the settlement money in his trust account until the dispute was resolved.

¶ 4      Saulter argues the trial court properly dismissed the complaint as he did not have a contract with Prospect and, alternatively, if there was a contract, it was void as champertous under Minnesota law.

¶ 5      We affirm the dismissal. The trial court was not obligated to give full faith and credit to a Minnesota default judgment that was not on the merits and was not directed against Saulter. The purchase agreement and letter of direction were interdependent, and because the purchase agreement is unenforceable under controlling Minnesota law, the letter of direction was also not enforceable. Lastly, an alleged violation of the Illinois Rules of Professional Conduct does not give rise to a private cause of action as our supreme court has given the Illinois Attorney Registration and Disciplinary Commission (ARDC) exclusive power to discipline attorneys for violations. We direct, however, the clerk of the court to forward a copy of this opinion to the ARDC for further investigation.

¶ 6                               BACKGROUND

¶ 7      Saulter and his law firm, Saulter Tarver PC, represented Wright-Housen in a wrongful death lawsuit. (Wright-Housen is not a party to this case.) Saulter contacted Prospect, a

litigation financing firm, to inquire about selling a portion of Wright-Housen's lawsuit in exchange for a nonrecourse interest in any proceeds from the suit. Prospect agreed to loan Wright-Housen $25,000 (plus a $4500 fee) in exchange for a return of the loan plus 4% interest compounded monthly from any judgment or settlement. If Wright-Housen did not obtain a judgment or settlement, she did not have to repay Prospect.

¶ 8 Prospect and Wright-Housen entered into a purchase agreement detailing the terms of the loan. The parties agreed that "all disputes, claims, or controversies arising out of or relating to this Agreement or the relationships that result from this Agreement shall be governed, construed and enforced in accordance with the law of the State of Minnesota." The agreement also provided that "all actions or proceedings in any way, manner or respect, arising out of or related to this agreement" would be litigated in Hennepin County, Minnesota. The purchase agreement included a "Certification of Seller's Attorney," which Saulter signed, certifying that "[a]ll proceeds of the legal claim will be disbursed via the attorneys [*sic*] trust account" and that he would abide by written instructions from his client with regard to the purchase agreement.

¶ 9 Wright-Housen also executed an irrevocable letter of direction instructing Saulter to disburse all proceeds of the lawsuit through an attorney's trust account. Under the letter of direction, the settlement funds would not be released to Wright-Housen until after Saulter's legal fees and costs were paid and Prospect was paid in full. Saulter signed an "Attorney Acknowledgement" to honor the letter of direction.

¶ 10 The wrongful death case settled in July 2014. Prospect contacted Saulter about repayment on its loan. Saulter told Prospect he was not holding client funds from the settlement in his trust account and advised Prospect to contact Wright-Housen directly for repayment.

¶ 11 After being unable to collect from Wright-Housen, Prospect sued her and Saulter in Hennepin County, Minnesota. The Minnesota court found that Saulter was not subject to personal jurisdiction in Minnesota because he was a Chicago lawyer, who was not licensed to practice in Minnesota, and had not been in the state for eight years. The court also found that the Minnesota forum selection clause in the purchase agreement did not apply to Saulter, rejecting Prospect's argument that the "Certification of Seller's Attorney" to the purchase agreement or the "Attorney Acknowledgment" to the letter of direction bound Saulter to the terms of the purchase agreement. The court stated, "By agreeing to certain obligations that may be contained in, or derivative of, terms of the Purchase Agreement, Saulter is not adopting the entire Purchase Agreement nor signifying any intent to be bound by provisions that are not included in the forms he signed." The court found that because Saulter was not bound by the forum selection clause, the court did not have personal jurisdiction over him and dismissed the case against him, without prejudice.

¶ 12 After dismissing Saulter, the Minnesota court entered a default judgment against Wright-Housen. As to the legality of the purchase agreement in light of Minnesota's common law against agreements of champerty, that is, third-party financing of lawsuits, the court said, "on the facts of this case, it is unclear whether the doctrine of champerty, assuming it's still viable in Minnesota, would bar this action." The court also noted that illegality of contract is an affirmative defense that could only be asserted by Wright-Housen, who did not appear and thus could not raise it.

¶ 13 After collection efforts on the default judgment failed, Prospect sued Saulter and his law firm in Illinois. Prospect's amended complaint alleged breach of contract (count I), breach of

fiduciary duty (count II), professional negligence (count III), promissory estoppel (count IV), and conversion (count V). Prospect alleged that by signing the attorney acknowledgement to the letter of direction, Saulter promised to repay Prospect's priority lien from the settlement proceeds and breached that promise by failing to pay or to hold the money in dispute in his trust account until the dispute was settled. Prospect also alleged it had a right to rely on Saulter's compliance with the Illinois Rules of Professional Conduct and his fiduciary obligations and that Saulter violated those rules by (i) aiding and abetting Wright-Housen to breach her agreement with Prospect and commit fraud, (ii) making false statements of material fact to Prospect, (iii) violating the rules for safekeeping property and the proper use of client trust accounts, (iv) failing to notify Prospect that the settlement proceeds were in their client trust account, (v) failing to provide an accounting of the settlement proceeds, and (vi) failing to maintain the settlement proceeds in the trust account until the dispute could be resolved.

¶ 14       Saulter moved to dismiss arguing he and Prospect did not have a contract and if they did, the contract was champertous and void under Minnesota Law, requiring dismissal. The trial court granted the motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)), finding that Minnesota law prohibits contracts for champerty and thus, the underlying agreement was illegal and any attempts to recover on it are impermissible.

¶ 15                                            ANALYSIS
¶ 16                                       Full Faith and Credit
¶ 17       Prospect first contends the trial court should not have dismissed its complaint because the court was obligated to give full faith and credit to the Minnesota default judgment against Wright-Housen. Specifically, Prospect asserts that by entering a default judgment, the Minnesota court concluded the purchase agreement was enforceable and not champertous, and under the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1), the Illinois court must enforce that judgment and may not dismiss on the grounds that the agreement is champertous, as that issue has been decided by the Minnesota court.

¶ 18       The full faith and credit clause of the United States Constitution provides that full faith and credit must be given to the judicial proceedings of every other state. *First Wisconsin National Bank of Milwaukee v. Kramer*, 202 Ill. App. 3d 1043, 1047 (1990). The Uniform Enforcement of Foreign Judgments Act (735 ILCS 5/12-650 *et seq.* (West 2014)) implements the full faith and credit clause and facilitates the interstate enforcement of judgments in any jurisdiction where the judgment debtor is found. *Ace Metal Fabricating Co. v. Arvid C. Walberg & Co.* 135 Ill. App. 3d 452, 455 (1985). "A lawsuit which has been pursued to judgment should be as conclusive in every other court as it is in the court where judgment was entered." *Kramer*, 202 Ill. App. 3d at 1047.

¶ 19       Under the full faith and credit clause, if Prospect sought to enforce the default judgment against Wright-Housen, an Illinois court would be obligated to enforce that judgment. Here, though, Prospect does not seek to enforce the default judgment; instead, Prospect has filed a separate lawsuit against Saulter, who, having been dismissed from the Minnesota case, was not a party to the default judgment.

¶ 20       Moreover, contrary to Prospect's assertion, the Minnesota court did not find that the purchase agreement was enforceable and not champertous. The Minnesota court expressly noted that champerty was an affirmative defense that could only be raised by Wright-Housen,

who was not present. The court stated, "it is unclear whether the doctrine of champerty, assuming it's still viable in Minnesota, would bar this action." This does not constitute a finding on the legality of the agreement and would not be binding on an Illinois court.

¶ 21                                            Letter of Direction

¶ 22     Prospect next contends the letter of direction must be construed under Illinois law, which provides no basis for invalidating it as champertous on public policy grounds. Saulter argues in response that the letter of direction was an agreement between him and Wright-Housen and there was no privity of contract between him and Prospect because there was no offer, acceptance, or consideration. Alternatively, Saulter asserts that the purchase agreement was champertous and unenforceable under Minnesota law, and any cause of action based on that agreement must be dismissed.

¶ 23     Saulter moved to dismiss under section 2-619.1 of the Code, which permits a party to move for dismissal under both sections 2-615 and 2-619. 735 ILCS 5/2-619.1 (West 2014). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. A motion brought under section 2-619 admits the sufficiency of the complaint, and asserts affirmative matter that avoids or defeats the claim. *Id.* We review a dismissal under either sections 2-615 or 2-619 *de novo*. *Id.* Accordingly, we may affirm the judgment on any grounds found in the record, regardless of the trial court's reasons. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 16.

¶ 24     If a contract is entered for the direct benefit of a third person, the third person may sue for breach of the contract even though he or she is not a party to the contract. *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 973 (1998). Whether a party constitutes a third-party beneficiary depends on the intent of the contracting parties and made on a case-by-case basis. *Midwest Concrete Products Co. v. La Salle National Bank*, 94 Ill. App. 3d 394, 396 (1981). The terms of the contract control the rights of the third party. *Id.* at 397. This means the liability of a promisor cannot be extended by the third party beyond the terms of the contract or enlarged merely on the ground that the circumstances justify further liability. *Id.*

¶ 25     The letter of direction directs Saulter to pay Prospect from the proceeds of any settlement before paying Wright-Housen and expressly states "Prospect Funding Holdings LLC has relied on this irrevocable Letter of Direction to fund the Purchase Agreement." Thus, Prospect is a third-party beneficiary to the letter of direction. But, both Prospect's rights as a third-party beneficiary and Saulter's obligations under the letter of direction are dependent on the validity of the purchase agreement. If the purchase agreement is unenforceable, Prospect cannot sue to enforce its terms through the letter of direction.

¶ 26     The parties disagree as to whether Illinois or Minnesota law should be applied. Subject to constitutional limitations, the forum court applies the choice of law rules of its own state. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Illinois courts employ the Restatement (Second) of Conflict of Laws to resolve choice of law questions. *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 9. Generally, Illinois applies the law of the state with the most significant relationship to the issue. *Gregory v. Beazer East*, 384 Ill. App. 3d 178 (2008).

¶ 27     Prospect asserts that because the letter of direction contains no choice of law provision and Illinois is the forum that has the most significant relationship to the letter of direction, Illinois law applies. But, as noted, the enforceability of the letter of direction is dependent on the

validity of the underlying purchase agreement. And that agreement plainly states that it is controlled by Minnesota law, so that is the law we will look to in deciding its validity.

¶ 28    Minnesota follows the common-law rule prohibiting contracts for champerty. *Maslowski v. Prospect Funding Partners LLC*, 890 N.W.2d 756, 763 (Minn. Ct. App. 2017) (citing *Huber v. Johnson*, 70 N.W. 806, 807 (Minn. 1897)). Champerty is defined as " '[a]n agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant['s] claims as consideration for receiving part of any judgment proceeds.' " *Johnson v. Wright*, 682 N.W.2d 671, 675 (Minn. Ct. App. 2004) (quoting Black's Law Dictionary 224 (7th ed. 1999)). Recently, in *Prospect Funding Partners, LLC v. Williams*, No. 27-CV-13-8745, 2014 Minn. Dist. LEXIS 2 (Dist. Ct. Hennepin County, Minn., May 5, 2014), a trial court in Minnesota reiterated the state's long-standing prohibition on champertous contracts. The court noted that "the ill effects of a contract that gives a stranger a contingent interest in the outcome of litigation go well beyond encouraging people to sue or direct control of the litigation." *Id.* at *21. In addition to the other "ill effects," including creating a disincentive to settle and permitting strangers to profit from the litigation of others, the court noted that litigation funding agreements permit the funders to lend litigants money without the regulations that cover loans and prohibit usurious interest rates, which was 4.5%, compounded monthly. The court noted that Minnesota caps interest on loans of less than $100,000 at 8% per year (Minn. Stat. § 334.01 (2014)) and that the interest on the loan would be 54%, well above that limit.

¶ 29    The exact same concerns raised by the *Williams* court are present in the purchase agreement between Prospect and Wright-Housen. The agreement not only gives a third party an interest in Wright-Housen's case, potentially affecting whether and when she decides to settle, it permits Prospect to make an enormous profit off of its loan by charging a usurious 4% interest rate, compounded monthly, without being subjected to any regulations. The purchase agreement was champertous and thus unenforceable under Minnesota law.

¶ 30    Prospect argues, however, that even if the purchase agreement is champertous, Saulter is not a party to that agreement and thus, cannot raise champerty as a defense. Relying on Illinois and Minnesota cases, Prospect contends the defense of champerty can only be raised by a party to the champertous contract and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates. See, *e.g.*, *Oil, Inc. v. Martin*, 381 Ill. 11, 19 (1942); *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1170-71 (D. Minn. 2013); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 726 (N.D. Ill. 2014). But the cases Prospect cites are factually distinguishable because they involved strangers to the agreement seeking to use champerty as a defense to an underlying lawsuit or as a separate cause of action. For instance, *Miller* concerned a discovery dispute between Miller UK Ltd. and Caterpillar, Inc., stemming from a cause of action for misappropriation of trade secrets. *Miller*, 17 F. Supp. 3d at 717. Caterpillar claimed that Miller's use of contracted third-party funding in litigation violated Illinois law prohibiting maintenance and champerty and was, therefore, a complete defense to the underlying causes of action raised by Miller. *Id.* at 724. The *Miller* court did not agree, noting that "the defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates." (Internal quotation marks omitted.) *Id.* at 726.

¶ 31    In *Ness*, consumers filed a class action lawsuit against a debt collection business, the business's law firm, and attorneys who were both shareholders of the law firm and owners of

the debt collecting business alleging violations of Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2012)). *Ness*, 933 F. Supp. 2d at 1161. The plaintiffs alleged, in part, that the lawyers engaged in champerty by creating a debt collection business as a fabricated client when the attorneys, as the business's owners, were the true parties in interest. *Id.* at 1170. The trial court disagreed, noting that the plaintiffs did not allege the existence of any contracts with the defendants and were attempting to assert champerty as an independent cause of action, which is not cognizable under Minnesota law. *Id.* at 1171.

¶ 32        Unlike Caterpillar in the *Miller* case, Saulter is not a complete stranger to the purchase agreement because his obligations under the letter of direction are wholly dependent on the enforceability of the agreement. Further, unlike the plaintiffs in *Ness*, Saulter is not seeking to bring a separate cause of action alleging champerty. Instead, Saulter contends that Prospect, a third-party beneficiary, cannot enforce a letter of direction that depends on a champertous and unenforceable purchase agreement. Under section 309(4) of the Restatement (Second) of Contracts, a beneficiary's right against the promisor is subject to any claim or defense arising from his or her own conduct or agreement. Restatement (Second) of Contracts § 309(4) (1981); see also *Hansen v. Proctor*, 74 N.W.2d 281, 284 (Minn. 1955) (holding that in suit against promisor, third-party beneficiary to contract generally subject to same defenses as parties to contract itself). Thus, the fact that Saulter was not a party to the purchase agreement did not preclude him from arguing the agreement was champertous when Prospect sought to enforce the letter of direction. Because we agree with the trial court's finding that the purchase agreement was unenforceable under Minnesota law, we affirm.

¶ 33                    Professional Obligation to Hold Funds in Trust Account

¶ 34        Lastly, Prospect argues the trial court should not have dismissed the amended complaint because Saulter had a professional duty under the Illinois Rules of Professional Conduct (Ill. R. Prof'l Conduct (2010) R. 1.15(e) (eff. July 1, 2015)), to hold the disputed funds until the disagreement was resolved. Rule 1.15(e) provides, in part, that a lawyer

> "in possession of property in which two or more persons (one of whom may be the lawyer) claim interest, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute." *Id.*

Prospect contends the trial court should have considered Saulter's professional obligations under Rule 1.15(e) before dismissing its complaint.

¶ 35        Our supreme court has the exclusive authority to prescribe rules governing attorney conduct and to discipline attorneys who violate these rules. *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494 (1988). Consistent with this authority, the supreme court has adopted the Illinois Rules of Professional Conduct, appointed the ARDC, and "created a procedural scheme to enhance the ARDC in performing its duties." *Id.* "[T]hrough the use of its exclusive judicial power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, [our supreme court] has created a comprehensive program to regulate attorneys and punish their misconduct." *Id.* Our supreme court has stressed that rules of professional conduct are mandatory and "[a]ttorneys who fail to understand them or follow them do so at their peril." *In re Demuth*, 126 Ill. 2d 1, 13 (1988).

¶ 36    Although the Illinois Rules of Professional Conduct are "a safe guide for professional conduct" and attorneys may be disciplined for failing to observe them (*In re Himmel*, 125 Ill. 2d 531, 538 (1988)),

> "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. *** The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." Ill. R. Prof'l Conduct (2010), Preamble (eff. Jan. 1, 2010).

While violation of the professional conduct rules may be relevant to the standard of care in a legal malpractice claim, the rules themselves do not establish a separate duty or cause of action. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 353 (2000).

¶ 37    Thus, even if Saulter had a duty under Rule 1.15 to hold the settlement funds in his trust account, an issue we need not address, his failure to do so cannot serve as the basis of a claim by Prospect. This does not, however, preclude the ARDC from considering Saulter's conduct, and we direct the appellate court clerk to send a copy of this opinion to the ARDC for further investigation.

¶ 38    Affirmed; opinion referred to the ARDC.

¶ 39    JUSTICE MASON, specially concurring:

¶ 40    I concur in the majority's decision to affirm dismissal of Prospect's complaint. The agreement entered into between Prospect and Wright-Housen was clearly usurious as its 4% monthly compounded interest translated into an annual interest rate in excess of 60%. Whether or not the agreement was, in addition, champertous,[1] it would not be enforced in any court in Illinois or Minnesota. See 815 ILCS 205/4 (West 2016) (9% maximum annual rate of interest on loans); Minn. Stat. Ann. § 334.01 (West 2016) (8% maximum rate). This is particularly true given that any recovery in Wright-Housen's wrongful death case inured not only to her but also to her minor children's benefit. No court in Illinois would approve a minor's settlement of a wrongful death claim that provided for the entirety of the recovery to go to a lawsuit lender. *Ott v. Little Co. of Mary Hospital*, 273 Ill. App. 3d 563, 573 (1995) (court may only approve settlement that is in best interest of the minor).

---

[1]As the majority notes, Black's Law Dictionary defines "champerty" as "[a]n agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant['s] claims as consideration for receiving part of any judgment proceeds." Black's Law Dictionary 224 (7th ed. 1999). Black's defines the related practice of "maintenance" as "[a]ssistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case; meddling in someone else's litigation." *Id.* at 965. Prospect loaned Wright-Housen a modest sum of money at a usurious rate of interest, but did not otherwise assume control over or meddle in her wrongful death lawsuit. It is therefore debatable whether the agreement is, in fact, champertous. See *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 725 (N.D. Ill. 2014) (applying Illinois law to conclude that third-party litigation funding did not constitute champerty or maintenance); but see *Prospect Funding Partners, LLC v. Williams*, No. 27-CV-13-8745, 2014 Minn. Dist. LEXIS 2, *28-29 (Dist. Ct. Hennepin County, Minn., May 5, 2014) (invalidating similar agreement under Minnesota law as contrary to public policy).

¶ 41　　　　I write specially because I am troubled by the implication that an attorney's express undertaking (whether labeled a "certification" or an "acknowledgement") to hold funds in his or her client account does not give rise to any claim by the party to whom the commitment was made when funds are later disbursed (i) in clear contravention of the promise and (ii) to the attorney's benefit. Saulter initiated the transaction with Prospect on behalf of his client. Indeed, this was the second such loan Saulter had arranged for Wright-Housen; part of the proceeds from Prospect's loan were used to pay off an earlier loan from another lawsuit lender. Saulter, who certified that he had "reviewed" and "explained" the terms and conditions of the agreement to Wright-Housen, undoubtedly knew that if he did not agree to be bound by the irrevocable letter of direction that required him to hold the proceeds of any settlement or judgment pending resolution of Prospect's claim under the loan agreement, Prospect would not have made the loan. The record does not disclose what use Wright-Housen made of the proceeds of the loan, but it is entirely possible that without Prospect's money, Wright-Housen's financial straits may have forced her to accept a lowball settlement offer (resulting in lower attorney fees to Saulter). The fact that Saulter believed, correctly as it turns out, that Prospect's agreement was unenforceable, did not give him license to disregard the commitments both he and his client voluntarily made. And the fact that the victim of the breach of those commitments was a usurious lender should not lead us to overlook the serious ethical concerns presented by Saulter's conduct.